1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILSON AEROSPACE LLC,

               Plaintiff,

     v.

THE BOEING COMPANY INC,

             Defendant.

CASE NO. 2:23-cv-00847-JHC

ORDER RE: MOTION TO DISMISS

# I

## INTRODUCTION

This matter comes before the Court on Defendant The Boeing Company's Motion to Dismiss Plaintiff's First Amended Complaint. *See* Dkt. # 120 (redacted). Plaintiff Wilson Aerospace LLC alleges that, after it provided Boeing with custom-built aerospace technologies, Boeing stole, copied, and counterfeited Wilson's intellectual property; Wilson brings claims under federal and state law. *See* Dkt. # 102 at 1–8 ¶¶ 1–26. Boeing seeks dismissal under Federal Rule of Civil Procedure 12(b)(6), contending that Wilson fails to state a claim upon which relief can be granted. Dkt. # 120. For the reasons below, the Court GRANTS in part and

ORDER RE: MOTION TO DISMISS - 1

DENIES in part the motion.  And the Court GRANTS Wilson leave to file a second amended complaint.

## II

### BACKGROUND

The factual background herein derives from the allegations in the First Amended Complaint (FAC), *see* Dkt. # 102, which the Court accepts as true on a Rule 12(b)(6) motion to dismiss.

Wilson designs, develops, and manufactures custom-built tools for the aerospace, aviation, and defense industries.  Dkt. # 102 at 8–9 ¶ 26.  Boeing designs and manufactures airplanes, rotorcraft, rockets, satellites, telecommunications equipment, and missiles.  *Id.* at 9 ¶ 27.  Wilson has created "numerous tools for Boeing over the years, many of which were designed for use in tightening fittings and valves to the optimum degree of tightness . . . to avoid unnecessary damage and potential for dangerous leaks and releases of toxic and explosive fluids in aircraft and space vehicles."  *Id.* at 10 ¶ 31.

On October 29, 2012, Wilson and Boeing entered into non-disclosure and proprietary information agreement (2012 PIA) and, on August 29, 2014, the parties entered a second proprietary information agreement (2014 PIA).  *Id.* at 10 ¶ 33.  The 2012 PIA "governed the exchange of information 'related to torque tools used in manufacturing'" and the 2014 PIA "governed the exchange of information relating to 'NASA's next generation launch vehicle(s) but not limited to Space Launch Program.'"  *Id.* at 10 ¶¶ 33, 35; Dkt. # 1-2 (2012 PIA); Dkt. # 1-3 (2014 PIA).

Wilson developed four iterations of a "specialty tooling lineup called the Fluid Fitting Torque Device" (FFTD), a "family of tools [] invented for the specific purpose of tightening and loosening fittings[,]" for the International Space Station (ISS) and Boeing's Space Launch

System (SLS).  *See* Dkt. # 102 at 12 ¶¶ 43, 45.  Wilson invented a "state-of-the-art successor" to

its first iteration of the tool (FFTD-1), called the FFTD-3.  *Id.* at 13 ¶ 49.  Boeing misused this

family of tools.  *See id.* at 21–31 ¶¶ 86–141.  For example, there was a "trapped fitting incident"

on November 18, 2015, when an FFTD-1 was "abandoned in place" during the installation of an

airlock kit on the ISS.  *See id.* at 34 ¶ 165.  Also, Boeing and another company, Oakridge Tool &

Engineering, built counterfeit FFTDs using Wilson's design, which tools were ultimately

defective and caused "negative publicity" for Wilson.  *Id.* at 39–40 ¶¶ 191–94.

   During its relationship with Boeing, Wilson developed other tools, including the

"Dreamliner Bolting Tool," which is "a series of tools Wilson designed and proposed to Boeing

to install bolts and fasteners on commercial aircraft."[1]  *Id.* at 14 ¶ 55; Dkt. # 10 (sealed).

   Although "Boeing paid Wilson for some of its work over the years, Boeing's primary

approach was to steal [its] intellectual property through deception and other illegal means, rather

than compensate Wilson for its work[.]"  *Id.* at 11 ¶ 38.  Boeing "has followed a pattern

throughout its" aviation, SLS, and ISS programs, of

- "[r]equesting confidential information under the protection of a PIA";

- "[b]aiting Wilson to get started with the prospect of lucrative, future work";

---

[1] Wilson created other tools during its business relationship with Boeing, including: (1) the Torque Tester: "a custom designed, table mounted precision "beam balancer" style torque tester, which uses heavy duty components to minimize torque deflection and distortion error to provide highest fidelity results possible for critical applications[,]" Dkt. # 102 at 13 ¶ 51; Dkt. # 7 (sealed); (2) the Capture Latch: a tool that Wilson "co-developed with Boeing" that is "used to dock space vehicles" on the ISS, Dkt. # 102 at 13–14 ¶ 52; Dkt. # 8 (sealed); (3) the Switch Tester: "a testing apparatus Wilson designed and demonstrated to Boeing which synchronized the timing of the four limit switches on the *Capture Latch* equipment[,]" Dkt. # 102 at 14 ¶ 53 (emphasis in original); (4) the Spring Compressor: a tool "Wilson designed and proposed to Boeing . . . used to install high power springs for assembly of the Capture Latches[,]" Dkt. # 102 at 14 ¶ 54; and (5) the Gearbox: "an assembly for the nose cone cover of the Boeing CST-100 Starliner[,]"  Dkt. # 102 at 14 ¶ 56; Dkt. # 11.

- "[d]isseminating Wilson's work to co-conspirators for development while taking credit for derived design/manufacturing and receiving compensation for the work";

- "[c]overing up and concealing its intellectual property theft by expunging Wilson's involvement in numerous Boeing projects as a pretext to eliminate Wilson as a qualified supplier of critical parts and tools"; and

- "[g]enerating hundreds of millions of dollars in revenue based on the intellectual property stolen from Wilson."

*Id.* at 11 ¶ 39.

Various circumstances show Boeing's bad acts. For example, Boeing reached out to Wilson to set up an in-person presentation of the FFTD-3. *Id.* at 23–24 ¶¶ 97–99. In October 2014, Wilson performed a live presentation for various Boeing employees. *Id.* at 24 ¶¶ 100–01; Dkt. ## 23, 24. Wilson "later learned that at least seven of those in attendance for the live presentation were external to Boeing and were, at the time, employees of Wilson's direct competitors" (who Wilson calls the "Bogus Boeing Employees"). Dkt. # 102 at 24 ¶ 102. Sometime after this meeting, Wilson "discovered that Boeing's internal records listed several people working for Wilson competitors as employees of Wilson with authority to make unauthorized management decisions for Wilson" (who Wilson calls "Ghost Employees"). *Id.* at 50 ¶ 252.

On June 6, 2023, Wilson filed this action. Boeing moved to dismiss on September 5, 2023. Dkt. # 88 (redacted motion). In response, Wilson sought leave to file an FAC, which the Court granted. Dkt. ## 99, 100. On October 18, 2023, Wilson filed its FAC, bringing 11 causes of action: (1) copyright infringement; (2) trade secret misappropriation regarding the FFTD-3; (3) trade secret misappropriation regarding the Dreamliner Bolting Tool; (4) trademark

infringement regarding counterfeit FFTD-1 products; (5) violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) and Washington Criminal Profiteering Act (WCPA); (6); civil conspiracy; (7) fraud; (8) negligent misrepresentation (pleaded in the alternative to fraud); (9) tortious interference with prospective advantage; (10) breach of contract; and (11) unjust enrichment (pleaded in the alternative to breach of contract). *See* Dkt. # 102.  Boeing moves to dismiss the FAC, contending that it fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); Dkt. ## 120, 129.  Wilson opposes.  Dkt. # 128.

### III

#### DISCUSSION

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The Court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A.      Copyright Infringement

According to Wilson, it is "the author and sole legal owner of the exclusive copyrights in the computer source code associated with the FFTD-3 models . . . and all derivative works relating thereto."  Dkt. # 102 at 52 ¶ 263.  In 2014, Wilson created the FFTD-3 source code and fixed it in tangible medium through its storage in computer memory. *Id.* at 52 ¶ 264.  Wilson registered the FFTD-3 Source Code, and derivative works, under three U.S. Copyright registrations: (1) on May 18, 2022, Wilson registered U.S. Copyright No. TXu 2-317-216 (the

'216 Work), *see* Dkt. # 120-3; (2) on September 12, 2022, Wilson registered U.S. Copyright No. TXu 2-352-919 (the '919 Work), *see* Dkt. # 120-1; and (3) on September 22, 2023, Wilson registered U.S. Copyright No. TXu 2-392-315 (the '315 Work), *see* Dkt. # 120-2.  Dkt. # 102 at 52 ¶¶ 264–65.  In these applications, Wilson noted that it had created the '315 Work in 2014, *see* Dkt. # 120-1 at 2, and the '919 and '216 Works in 2019.  *See* Dkt. # 120-2; Dkt. # 120-3; Dkt. # 120-4 at 13; Dkt. # 120-5 at 12.

After signing the 2014 PIA, Wilson alleges that it shared its proprietary information— including the FFTD-3 source code—with Boeing.  Dkt. # 102 at 52–53 ¶ 268.  Boeing then impermissibly downloaded, copied, reproduced, and distributed the FFTD-3 source code to third parties and created derivative competing tools based on that code for its own economic gain.  *Id.* at 53–54 ¶¶ 271–72, 76.  Boeing copied Wilson's "B-Nut Fitting Instrument Grade Installation Tool" (FFTD tool) and then created its own infringing product called the "Self-Reacting Torque Tools for B-Nuts."  Dkt. # 128 at 16; *see* Dkt. # 102 at 31 ¶ 140.

Boeing seeks to dismiss Wilson's claim for copyright infringement on four grounds, discussed below.  Dkt. # 119 at 13–17.

1.     '919 Work and '216 Work copyright claims

Boeing seeks to dismiss Wilson's copyright infringement claims related to the '919 and '216 Works.  Boeing says that because Wilson listed the creation date of both works on their patent applications as 2019, Wilson cannot sustain a copyright claim because it alleges that Boeing downloaded and reproduced the FFTD-3 source code in 2014, before the two Works' creation.  Dkt. # 120 at 14.  Boeing contends that Wilson's claims should be dismissed because one "cannot infringe what does not exist."  Dkt. # 120 at 14–15 (citing 17 U.S.C. § 302(a); *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002)).

1    Wilson responds that Boeing's position is incorrect because the '216 and '919 Works are

2    derivative of its '315 Work.  *See* Dkt. # 102 at 52 ¶ 264–65.  Wilson says that, while the '216

3    and '919 Works' "script code" code was created in 2019, their "core source code" was created in

4    2014 and copyrighted under the '315 work.  Dkt. # 128 at 14–15.

5    A claim for copyright infringement requires "(1) ownership of a valid copyright, and (2)

6    copying of constituent elements of the work that are original."  *Feist Publ'ns, Inc. v. Rural Tel.*

7    *Serv.*, 499 U.S. 340, 361 (1991); *Great Minds v. Off. Depot, Inc.*, 945 F.3d 1106, 1110 (9th Cir.

8    2019).  A work is created when "it is fixed in a copy" for the first time, and if a work "has been

9    prepared in different versions, each version constitutes a separate work."  17 U.S.C. § 101.

10   Federal copyright protection runs from the work's creation; the registration of a copyright merely

11   entitles the owner to institute a civil action for infringement.  *See Fourth Est. Pub. Benefit Corp.*

12   *v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019).

13   A "work consisting of editorial revisions, annotations, elaborations, or other

14   modifications which, as a whole, represent an original work of authorship, is a 'derivative

15   work.'"  17 U.S.C. § 101.  If the owner of the original work prepares a derivative work, they

16   have a copyright in both the original elements and derivative elements.  17 U.S.C. § 106(2) (a

17   copyright owner "has the exclusive right[ ] to . . . prepare derivative works based upon [this]

18   copyrighted work"); *Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*, 73 F.4th 1048,

19   1056 (9th Cir. 2023) (considering "whether a copyright owner who creates an original work (but

20   does not register it) and subsequently registers a derivative work based on that original work

21   registers the elements in the original work that are included in the derivative work" and

22   concluding that, because of the "flexible nature of registration," the registration of a  derivative

23   work registers such elements.).

24

ORDER RE: MOTION TO DISMISS - 7

1          Wilson contends that Boeing should be liable for any acts of infringement that occurred

2   before its two derivative works ('919 and '216 Works) were created because these works use

3   source code that was created in 2014.  Yet no matter if these works are derivative or separate, a

4   party cannot be liable for copyright infringement of a work if its alleged acts occurred *before* the

5   work was created.  *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1128 (9th Cir. 2002) ("By

6   simple logic, it is impossible to *copy* something that does not exist.  Thus, if Mattel created its

7   doll sculptures before CDC created Claudene in 1994, it is factually and legally impossible for

8   Mattel to be an infringer.").  Because the FAC alleges that Boeing downloaded and copied the

9   FFTD-3 source code sometime between 2014 and 2016—and before the '919 and '216 Works

10  were created in 2019—the Court dismisses Wilson's copyright infringement claims related to

11  these two works.  *See* Dkt. # 102 at 5 ¶ 16, 51–56 ¶¶ 262–86.

12          2.          Substantial similarity

13          To establish the second element of a copyright infringement claim—that a defendant has

14  copied a constituent element of the original—"a plaintiff must show . . . 'substantial similarity'

15  between the defendant's work and his own."  *See Berkic v. Crichton*, 761 F.2d 1289, 1291 (9th

16  Cir. 1985).

17          Boeing claims that Wilson has not alleged how Boeing's infringing copies are

18  "substantially similar" to the copyrighted work.  Dkt. # 120 at 15 (citing *Berkic v. Crichton*, 761

19  F.2d 1289, 1291 (9th Cir. 1985).  Wilson responds that, when accepting all facts alleged in the

20  FAC as true and in the light most favorable to Wilson, it has alleged that Boing gained access to

21  its source code in 2014 and then copied its FFTD-3 tool.  Dkt. # 128 at 15–16; *see* Dkt. # 102 at

22  21 ¶¶ 86–87, 24–27 ¶¶ 101–14, 29 ¶ 126, 31 ¶ 140.  According to Wilson, since discovery has

23  been stayed, it has been unable to obtain Boeing's source code associated with Boeing's "Self-

24

1   Reacting Torque Tools for B-Nuts" tool, and the Court should not dismiss its claim prematurely.

2   Dkt. # 128 at 17 (citing *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1319 (9th Cir. 1986)).

3          "Copying may be shown by circumstantial evidence of access and substantial similarity

4   of both the general ideas and expression between the copyrighted work and the allegedly

5   infringing work."  *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994).

6   In *Gay v. Facebook, Inc.*, Barrett Gay alleged that Facebook created a feature that infringed on

7   his copyrighted source code, which allowed users to post photographs in social media comments.

8   No. 16-CV-03013 NC, 2016 WL 10650825, at *1 (N.D. Cal. Oct. 19, 2016).  Facebook moved

9   to dismiss on the ground that Gay had failed "to state a copyright infringement claim because he

10  failed to plead facts as to substantial similarity between his work and the Facebook feature."  *Id.*

11  Gay responded that although he had alleged that Facebook's Chief Product Officer had access to

12  his source code, he could not compare his work to the infringing feature without accessing

13  Facebook's own source code, which the company refused to provide.  *Id.*  The district court

14  concluded that, because Gay had alleged that Facebook had access to his source code and the

15  two works expressed "the same general idea of allowing Facebook users to post photo comment

16  replies," Gay had stated a plausible claim that there was substantial similarity between his

17  original work and the allegedly infringing Facebook feature.  *Id.* at *2.

18         Wilson similarly alleges that Boeing had access to the FFTD-3 source code and engaged

19  in the act of downloading or copying it to its own computers.  Dkt. # 102 at 52–53 ¶¶ 268–71.

20  As in *Gay*, Wilson cannot compare its copyrighted source code with the that of the allegedly

21  infringing source code because Boeing has disclosed no information associated with its "Self-

22  Reacting Torque Tools for B-Nuts" tool.  Taking the allegations as true and in the light most

23  favorable to Wilson, the FAC has alleged plausible facts showing that Boeing had multiple

24  points of access to its copyrighted work and that the infringing product likely performs a similar

function as the FFTD family of tools.  *Id.* at 52–53 ¶¶ 268–76; *see id.* at 21–31 ¶¶ 86–141; Dkt. # 26 (sealed).  As for whether Wilson will *prove* substantial similarity between his work and Boeing's source code is not yet before the Court.  *See Gay*, 2016 WL 10650825, at *2; *Brocade Commun. Sys., Inc. v. A10 Networks, Inc.*, No. 10-CV-03428-LHK, 2011 WL 1044899, at *8 (N.D. Cal. Mar. 23, 2011) ("Source code is often not publicly available.  As a result, it can be difficult or impossible for a plaintiff to examine accused source code before some discovery has occurred. . . .  The Court finds that Brocade has alleged facts sufficient to make its copyright claim "plausible" rather than merely "possible," and therefore has met its pleadings-phase burden under *Iqbal*.  If discovery reveals that [Plaintiff's] allegations, many of which are made on information and belief, are incorrect, [Defendant] may move for summary judgment on the copyright infringement claim."); *Miller v. Facebook, Inc.*, No. C 10-00264 WHA, 2010 WL 2198204, at *6 (N.D. Cal. May 28, 2010).

   3. Copyrighting the expression of the idea

   Boeing states that its use of the FFTD-3 source code to "build, manufacture, and/or have manufactured a competing product" is not infringement because copyright protection is given only to the expression of the idea, not the idea itself.  Dkt. # 120 at 15–16 (citing *Mazer v. Stein*, 347 U.S. 201, 217 (1954); *Feist*, 499 U.S. at 353; 17 U.S.C. § 102(b)).  Boeing mainly relies on *RJ Control Consultants, Inc. v. Multieject, LLC*, 981 F.3d 446 (6th Cir. 2020), for its position that "a copyright on source code does not protect the source code's data output."  Dkt. # 120 at 16.  Boeing concludes that the right to use the FFTD-3 source code to create drawings to reconstruct an idea sounds in patent law rather than copyright and Wilson's copyright claim should be dismissed "at least to the extent it claims infringement through the alleged creation of drawings or the creation of a physical tool based on the FFTD-3 designs."  *Id.* at 16 (Boeing also cites *Dennis v Nike, Inc.*, No. 2:22-CV-04515, 2023 WL 2356719, at *5 (C.D. Cal. Feb. 13,

2023); *Design Data Corp. v. Unigate Enter., Inc.*, 63 F. Supp. 3d 1062, 1068 (N.D. Cal. 2014); *Niemi v. Am. Axle Mfg. & Holding Inc.*, No. 05-74210, 2006 WL 2077590, at *3 (E.D. Mich. July 24, 2006)).

Wilson responds that the precedents offered by Boeing, which concern the use of a drawing to build a system or a device, are not on point. Dkt. # 128 at 17.

"The copyright protects originality rather than novelty or invention—conferring only 'the sole right of multiplying copies.'" *Mazer v. Stein*, 347 U.S. at 218. In *RJ Control Consultants*, the Sixth Circuit considered whether the creation of a control system—based on the use of a copyrighted technical drawing—was copyright infringement; it concluded that "the recreation of a control system by using a copyrighted technical drawing is not 'copying' for purposes of the Copyright Act." 981 F.3d at 455. Yet Wilson's claim here is different; Wilson alleges that Boeing downloaded, copied, and distributed its source code, and that Boeing's creation of tools based on this source code would merely affect the Court's damages calculations. *See* Dkt. # 128 at 17; Dkt. # 102 at 53 ¶¶ 271–72. While manufacturing a competing product by using copyrighted drawings may not be an infringing act under copyright law—as held by the Sixth Circuit—downloading, copying, and distributing copyrighted works in an unauthorized manner *does* violate such protections. Copyright holders still possess the exclusive rights of reproduction and distribution of their works. *E.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1014 (9th Cir. 2001), *as amended* (Apr. 3, 2001), *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002), and *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002) ("Napster users who upload file names to the search index for others to copy violate plaintiffs' distribution rights. Napster users who download files containing copyrighted music violate plaintiffs' reproduction rights."); 17 U.S.C. § 106(1), (3).

Because Wilson alleges that Boeing downloaded, copied, and distributed its copyrighted source code, the Court declines to dismiss on this ground.

    4.      Authorization

    "[A]nyone who is authorized by the copyright owner to use the copyrighted work . . . is not an infringer of the copyright with respect to such use."  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984).  The owner of a copyright has the exclusive right to authorize a third parties' reproduction and distribution of its work.[2]

    Boeing seeks dismissal of Wilson's copyright claim because it says that its actions were authorized by the 2014 PIA.  Boeing says that the 2014 PIA authorized it to

> "*copy* Proprietary Information only as reasonably necessary for it to complete the purposes of this Agreement" and use "Proprietary Information," including the FFTD-3 source code, "for review, evaluation, *or in a Program proposal*." Similarly, the PIA permitted Boeing to "disclose such received Proprietary Information *to the U.S. Government* to support [a] proposal."

Dkt. # 120 at 17 (citing Dkt. # 1-3 at 3 ¶¶ 3–4) (emphasis in original).

    Wilson responds that while the 2014 PIA allowed Boeing limited use of its proprietary information to "review, evaluation, or in a Program proposal," it "expressly forbade Boeing from using the [core source code] for design or manufacture purposes without first obtaining Wilson's written consent." Dkt. # 128 at 18 (citing Dkt. # 1-3 at 3 ¶ 4).  Wilson highlights that Boeing's reproduction of its core source code "for use in the preparation and submission of a proposal to NASA in connection with the SLS project was conditioned upon Boeing 'mark[ing] the Proprietary Information with the appropriate restrictive legend that the U.S. Government specifies for use with such proposal.'" *Id.* (citing Dkt. 1-3 at 3 ¶ 5).  Wilson contends that

---

[2] Wilson acknowledges that its copyright claim is based on Boeing's alleged downloading and copying its FFTD-3 source code and not Boeing's alleged creation of a facsimile tool like the "Self-Reacting Torque Tools for B-Nuts." Dkt. # 128 at 17.

1    Boeing instead "created unauthorized copies" of its FFTD-3 code without its consent "by

2    modifying the FFTD tool design encompassed by the [core source code] to fit Boeing's SLS

3    three-dimensional engine section model in its March 17, 2015 proposal to NASA," which it

4    claims was a breach of the 2014 PIA.  Dkt. # 128 at 18–19 (citing Dkt. # 102 at 54 ¶ 275;

5    comparing Dkt. # 20 (sealed), with Dkt. # 26 (sealed)).

6         Construing these allegations in light most favorable to Wilson, it has stated plausible

7    facts that Boeing exceeded the terms of the 2014 PIA and acted without authority when it

8    reproduced and distributed the copyrighted source code.

9         The Court declines to dismiss Wilson's copyright claim on this ground.

10   B.     Trade Secret Misappropriation of the FFTD-3

11        Wilson alleges that Boeing misappropriated its trade secrets associated with the FFTD-3,

12   violating the Defense Technology Security Administration (DTSA) and the Washington Uniform

13   Trade Secret Act (WUTSA).  Dkt. # 102 at 56–61 ¶¶ 287–314.  Boeing contends that these

14   claims fail for two reasons: (1) the alleged misappropriation pre-dates the DTSA and (2) the

15   FFTD-3 design was published in patent applications and therefore cannot be a trade secret under

16   either the DTSA or WUTSA.  Dkt. # 120 at 17–18.

17        1.     Pre-dating the DTSA

18        Boeing contends that the DTSA applies only to acts that occurred on or after May 11,

19   2016, the date of DTSA enactment.  Dkt. # 120 at 18 (citing *Bombardier Inc. v. Mitsubishi*

20   *Aircraft Corp.*, 383 F. Supp. 3d 1169, 1184 (W.D. Wash. 2019)).  Boeing highlights that Wilson

21   alleges that Boeing engaged in pre-enactment misappropriation between 2014 and 2015, and its

22   allegations of post-enactment misappropriation are "conclusory."  *Id.*; Dkt. # 102 at 60 ¶ 310.

23        Wilson responds that "the misappropriation of a trade secret prior to the enactment of the

24   DTSA does not preclude a claim arising from post-enactment misappropriation or continued use

of the same trade secret." Dkt. # 128 at 19 (citing *Attia v. Google LLC*, 983 F.3d 420, 425 (9th Cir. 2020)). Wilson concludes that "there is a reasonable likelihood" that its FFTD-3 trade secrets were misappropriated by Boeing during the SLS project and "up to the SLS rocket's first launch on November 16, 2022." *Id.*

In *Attia*, the Ninth Circuit addressed "whether, as a matter of law, the pre-enactment disclosure of a trade secret forecloses the possibility of a DTSA claim arising from the continued use of the trade secret after enactment." 983 F.3d at 424. The appellate court concluded:

> If Congress had intended to preclude claims arising from post-enactment continued use that began prior to enactment, it could have done so by incorporating the language in section 11 of the [Uniform Trade Secret Act] into the DTSA. That it did not include such a provision in the DTSA *evinces congressional intent for the statute to apply also to post-enactment misappropriation that began prior to enactment*. Accordingly, we hold that the misappropriation of a trade secret prior to the enactment of the DTSA does not preclude a claim arising from post-enactment misappropriation or continued use of the same trade secret.

*Id.* at 425 (emphasis added).

The Court must therefore determine whether Wilson alleges plausible facts that Boeing's pre-enactment misappropriation of the trade secrets continued past May 11, 2016. The FAC alleges that Wilson owns various trade secrets that it shared with Boeing under the protection of the PIAs. Dkt. # 102 at 56–57 ¶¶ 287–90, 294 (citing Dkt. # 12 (sealed)). While the FAC alleges that Boeing engaged in misappropriation of these secrets before the DTSA's enactment, it does not provide sufficient factual matter regarding Boeing's post-enactment actions regarding those same trade secrets. For example, it alleges that Boeing improperly disclosed proprietary information to Wilson's direct competitors but does not clarify when this occurred and does not offer any details to support plausibility. *See id.* at 59 ¶ 306. The FAC alleges that Boeing continues to violate its trade secrets related to the FFTD-3 and this continues to present day, *see id.* at 60 ¶ 310, but does not specify how or when this misappropriation is alleged to have

occurred to state a claim that is plausible on its face.[3]  Because the FAC has not presented the Court with plausible facts related to post-enactment trade secret misappropriation, it has failed to state a claim under the DTSA.

        2.      Reasonable measures

Boeing also contends that Wilson's claims under the DTSA and WUTSA fail "because the FFTD-3 is not a protectable trade secret" since "it was not the subject of 'reasonable measures' to protect its secrecy" because of Wilson's patent applications.[4]  Dkt. # 120 at 19 (citing *Digit. Mentor, Inc. v. Ovivo USA, LLC*, No. 17-CV-1935, 2018 WL 6724765, at *6-7 (W.D. Wash. Dec. 21, 2018); 18 U.S.C. § 1839(3); RCW 19.108.010(4)(b)).  Boeing states that this is because, on August 28, 2014, and then on August 28, 2015, Wilson's owner, David Wilson Jr., filed two patent applications for its FFTD-3 design and, on the August 2015 non-provisional application, he did not choose the "Request Not to Publish" option.  Dkt. # 120 at 19–20; Dkt. # 88-3 at 1; Dkt. # 88-2.

Wilson responds that this argument fails because the contents of its August 2014 provisional patent application and August 2015 non-provisional application, *see* Dkt. ## 88-2, 88-3, were not publicly available until March 2, 2017.  Dkt. # 128 at 20.  Additionally, Wilson states that only some of its misappropriated trade secrets appear in the patent documents.[5]  Dkt. #

---

[3] Although Wilson claims that there is a "reasonable likelihood that [its] FFTD-3 trade secrets were misappropriated by Boeing for use during the SLS project, up to the SLS rocket's first launch on November 16, 2022," Dkt. # 128 at 19, it provides no other substantiating facts to support this claim.  Nor does Wilson provide legal authority to support the application of a "reasonable likelihood" standard here.

[4] The Court takes judicial notice of matters of public record, such as patent applications.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001); *PTP OneClick, LLC v. Avalara, Inc.*, 413 F. Supp. 3d 1050, 1057 (W.D. Wash. 2019) (collecting cases).

[5] Wilson says that the trade secrets omitted from the patent documents "include, but are not limited to, the process coatings (*E.g., Dkt.* 12, TS221), gear train pitch (TS085), pressure angles of the gears (TS036, TS046), gear train ratio information (TS065), ratchet geometry (TS115, TS135), and fastener information (TS124, TS144) for use pertaining to Boeing's specific application of the FFTD-3 tool[.]"  Dkt. # 128 at 22; *see* Dkt. # 12 (sealed).

128 at 21–22 (citing *Atl. Rsch. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1357 (Fed. Cir. 2011) ("Whether [plaintiff] had a trade secret and whether it was "something beyond" what was disclosed in [its] patent were matters for the jury to decide.")).

To meet the definition of a trade secret, the DTSA and WUTSA both require the owner of a trade secret to take reasonable steps to keep its information secret.  *See* 18 U.S.C. § 1839(3)(A) (to constitute a trade secret, an owner must take "reasonable measures to keep such information secret"); RCW 19.108.010(4)(b) (a trade secret "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy").  It follows that a patent applicant's failure to request the nonpublication of the application means that they have not taken reasonable steps to maintain the confidentiality of the contents of the application.  As a result, the information divulged in that application does not fit the definition of a trade secret.  *See Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 989 (Fed. Cir. 2013) (finding that plaintiff had "the option of filing a nonpublication request with his provisional patent application but chose not to do so" and therefore the ideas in his published patent application were not subject to "reasonable efforts" to maintain confidentiality); *Fleet Engineers, Inc. v. Mudguard Techs., LLC*, 761 F. App'x 989, 994 (Fed. Cir. 2019) (placing information in a patent application is a failure to use reasonable efforts to maintain secrecy).  Here, David Wilson Jr. had the option of filing a nonpublication request in August 2014, and when he did not, he failed to take reasonable steps to keep the information in the patent secret.  Whether the information he chose to publish became public on a certain date is not a central inquiry as to his "reasonable efforts" to maintain the confidentiality of these trade secrets.

Still, Boeing does not appear to challenge any trade secrets related to the FFTD-3 that were *not* included in the Wilson patent documents.  Because Wilson plausibly alleges that certain trade secrets were communicated to Boeing that were not a part of the patent documents, *see*

*supra* footnote 5, it has stated a claim for trade secret misappropriation for these trade secrets only.  *See* Dkt. # 102 at 56–57 ¶¶ 290, 293, 298–301; Dkt. # 128 at 22; Dkt. # 12 (sealed); Dkt. # 14 (sealed); Dkt. # 16 (sealed); Dkt. # 17 (sealed).

C.    Trade Secret Misappropriation of the Dreamliner Bolting Tool

Wilson claims that Boeing misappropriated its Dreamliner Bolting Tool under the DTSA and WUTSA.  *See* Dkt. # 102 at 61–63 ¶¶ 315–32.  Wilson says that it entered into the 2012 PIA and shared proprietary information with Boeing to develop and produce a high-torque tool for the assembly of the 787 Dreamliner aircraft.  *See id.*  Wilson alleges that, since then, Boeing continues to misappropriate this proprietary information, claiming that Boeing employee, James Brodhead, filed for a U.S. Patent for an "Offset Torque Multiplier" in 2020, and this patent application has certain components protected by the 2012 PIA.  *Id.* at 63 ¶ 331.

Boeing seeks to dismiss this claim on two grounds.  First, Boeing states that any DTSA pre-enactment claims must be dismissed.  Dkt. # 120 at 22.  As discussed, any pre-enactment misappropriation by Boeing is not actionable under the DTSA, but the statute does apply to post-enactment misappropriation that began before enactment.  *See supra* Section III.B.1.  Here, Wilson alleges specific actions of post-enactment misappropriation—Brodhead's patent filing in 2020—that plausibly connect Boeing's alleged pre-enactment acts with its post-enactment acts. *See* Dkt. # 102 at 63 ¶ 331.

Second, Boeing contends that Wilson's DTSA and WUTSA claims must be dismissed because "Wilson has not identified any trade secret that Boeing misappropriated."  Dkt. # 120 at 22 (citing *Digit. Mentor*, 2018 WL 6724765, at *6-8).  Boeing says that Wilson has failed to plead any trade secret "with reasonable particularity."  *Id.*  Wilson responds that the FAC specifically identifies trade secrets "TS013–TS016" as "being particularly applicable to the

1   Dreamliner Bolting Tool." Dkt. # 128 at 23–24 (citing Dkt. # 102 at 62 ¶ 325; Dkt. # 42; Dkt. #
2   12 (sealed)).

3        "[A] plaintiff who seeks relief for misappropriation of trade secrets must identify the
4   trade secrets and carry the burden of showing that they exist." *MAI Sys. Corp. v. Peak Comput.,*
5   *Inc.*, 991 F.2d 511, 522 (9th Cir. 1993). Courts generally require "sufficient pleading such that
6   the other party is on notice of what it is alleged to have misappropriated." *Yeiser Rsch. & Dev.*
7   *LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1044 (S.D. Cal. 2017) (citing *BlueEarth*
8   *Biofuels, LLC v. Hawaiian Elec. Co., Inc.*, 780 F. Supp. 2d 1061, 1078 (D. Haw. 2011)). A party
9   need "not disclose its alleged trade secrets in such detail that it would result in public disclosure
10  of those trade secrets, however, they must sufficiently identify those alleged trade secrets."
11  *Digit. Mentor, Inc*, 2018 WL 6724765, at *7.

12       Although Boeing contends that Wilson must identify any implicated trade secrets with
13  "reasonable particularity," it provides no legal authority to support this standard at the motion to
14  dismiss stage. And Wilson's complaint includes specific allegations about four trade secrets
15  misappropriated in connection with the "Dreamliner Bolting Tool." Dkt. # 102 at 62 ¶ 325; Dkt.
16  ## 42; Dkt. # 12 (sealed).

17       The Court thus rejects both of Boeing's arguments as to this claim.

18  D.    Trademark Infringement of FFTD Products

19       Wilson claims that Boeing has violated the Lanham Act, *see* 15 U.S.C. §§ 1114(1),
20  1125(a), by infringing its registered FFTD trademark, which it claims has been in use in
21  commerce since February 4, 1999. Dkt. # 102 at 64–66 ¶¶ 333–47. Wilson alleges that

22       Boeing sold, offered for sale, distributed, and/or had manufactured nonconforming
         reproductions, counterfeits, copies, and/or colorable imitations of one or more
23       iterations of the Fluid Fitting Torque Device (hereafter, the "Infringing Tools")
         to/for NASA, bearing Wilson's FFTD trademark, without the consent of Wilson,
24       in connection with interstate commerce by virtue of the numerous projects for

1  which Boeing was engaged by NASA as a contractor, such projects which include,
   but are not limited to, the ISS and SLS projects, inter alia.

2  *Id.* at 64 ¶ 336.

3      Boeing seeks dismissal, contending that an unregistered mark cannot be counterfeited.

4  Dkt. # 120 at 23 (citing 15 U.S.C. § 1114(1)(a) ("Any person who shall . . . use in commerce any

5  reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . .")).  Boeing says

6  that Wilson registered the FFTD trademark at issue on September 21, 2021, but Wilson alleges

7  that the counterfeiting took place *before* this registration date.  *Id.* (citing Dkt. # 72-1; *Ross v.*

8  *Target Corp.*, No. CV071147ODWPLAX, 2008 WL 11336378, at *4 (C.D. Cal. July 7, 2008)).[6]

9      Section 32(1) of the Lanham Act protects registered marks.  15 U.S.C. § 1114(1) ("Any

10 person who shall, without consent of the registrant . . . use in commerce any reproduction,

11 counterfeit, copy, or colorable imitation of a registered mark . . . shall be liable.").  District

12 courts—in the Ninth circuit and other circuits—have held that a plaintiff cannot recover for

13 infringement of a registered mark based on conduct that occurred before registration.  *Ross*, 2008

14 WL 11336378, at *4; *Monbo v. Nathan*, 623 F. Supp. 3d 56, 115–16 (E.D.N.Y. 2022),

15 *reconsideration denied,* No. 18-CV-5930 (MKB), 2022 WL 4134455 (E.D.N.Y. Sept. 11, 2022);

16 *Viacom Int'l, Inc. v. Armstrong Interactive, Inc.*, No. 18-CV-6117, 2019 WL 3890138, at *5 n.3

17 (S.D.N.Y. Aug. 19, 2019).  Therefore, Wilson may only allege an infringement claim under the

18 Lanham Act for acts that occurred after its September 21, 2021, mark registration.

19     Wilson appears to concede that it may not allege a trademark infringement claim based

20 on acts before the FFTD's registration but contends that "Boeing fails to take into account the

21 instances for which it continued to utilize Wilson's FFTD mark *after* the business relations

---

[6] The Court takes judicial notice of matters of public record, such as trademark registration materials.  *See, e.g.*, *Threshold Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020); *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1321 (C.D. Cal. 2023).

between Boeing and Wilson terminated."  Dkt. # 128 at 29 (emphasis in original).  Wilson says

that Boeing's infringing goods were used in commerce "by virtue of NASA's engagement of

Boeing" and references the first launch of the SLS rocket that occurred in November 2022, after

the FFTD mark registration.  *Id.*; Dkt. # 102 at 20 ¶ 82.

In reply, Boeing states that Wilson fails to show how the November 2022 launch is linked

to any alleged trademark infringement.  Dkt. # 129 at 15.  Further, Boeing contends that, "by

Wilson's own description," it was NASA, not Boeing, that allegedly infringed the FFTD mark.

*Id.* at 16.

The Court agrees with Boeing as the FAC and its supporting exhibits do not plausibly

support Wilson's position.  While Wilson broadly alleges that Boeing has infringed its FFTD

trademark, it is unclear exactly when Boeing did so.  Further, the allegations about the SLS

rocket launch in November 2022 lack specificity or any plausible link to trademark infringement.

The Court concludes that Wilson fails to offer plausible facts that Boeing used the trademarked

FFTD-1 tool after its trademark registration.[7]

E.      RICO and WCPA Claims

Wilson also brings a claim under the federal RICO statute, *see* 18 U.S.C. § 1962(c), and

the WCPA, *see* RCW 9A.82.010 *et seq.*

---

[7] Boeing presents two other arguments as to why Wilson's trademark infringement claim fails: (1) Wilson cannot rely on its trademark registration to avoid pleading a secondary meaning; and (2) Wilson's trademark dilution claim fails because the FFTD mark is not famous. Dkt. # 120 at 23–25. Wilson concedes that it has not pleaded a trademark dilution claim. Dkt. # 128 at 32. As for whether Wilson must plead a secondary meaning because Wilson has failed to state a claim under the Lanham Act on other grounds, the Court does not reach the issue.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1.      RICO Claim

To bring a Section 1962(c) RICO claim, a plaintiff must allege "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Salinas v. United States*, 522 U.S. 52, 62 (1997).  The statute states that

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C § 1962(c).

Boeing contends that Wilson fails to allege: (1) a defendant "person" separate from the alleged enterprise; (2) an association-in-fact enterprise; and (3) a pattern of "racketeering activity."  Dkt. # 120 at 25–30.

a.      Separate "person" from the alleged enterprise

"[U]nder § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same "person" referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001).  "Whether the Act seeks to prevent a person from victimizing, say, a small business, or to prevent a person from using a corporation for criminal purposes, the person and the victim, or the person and the tool, are different entities, not the same." *Id.* at 162 (citations omitted).

Boeing highlights that Wilson has not alleged that Boeing is the "person" who violated the RICO statute.  Dkt. # 120 at 27 (citing *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1534 (9th Cir. 1992) ("[F]or the purposes of a single action, a corporate defendant cannot be both the RICO person and the RICO enterprise under section 1962(c).")).  Appearing to concede this point, Wilson clarifies that it "narrows its allegations to an association in fact enterprise[.]"  Dkt. # 128 at 33.  Wilson states that "[s]ince Boeing alone cannot be both the enterprise and the defendant,

Wilson plead[s] that Boeing joined with several other entities and individuals from other entities to form an AIF enterprise targeting Wilson." *Id.* (citing Dkt. # 102 at 68–69 ¶¶ 356–61).

> b.    An association-in-fact enterprise

An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and *any union or group of individuals associated in fact* although not a legal entity[.]"  18 U.S.C. § 1961(4) (emphasis added).  To plead an association-in-fact enterprise RICO claim, a plaintiff must allege: (1) a common purpose; (2) an ongoing structure or organization to the enterprise; and (3) that the "enterprise had the longevity necessary to accomplish its purpose." *See Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1173–74 (E.D. Cal. 2017).

Boeing says that the FAC omits "any allegations supporting a common purpose for the associated-in-fact enterprise."  Dkt. # 120 at 28.  Wilson responds that it "plainly alleges pages of facts that plausibly support" a common purpose, which is "to steal Wilson's IP so that its competitors could leapfrog and avoid R&D expenses while working under Boeing's direction." Dkt. # 128 at 34 (citing Dkt. # 102 at 24–31 ¶¶ 100–09, 115, 128, 135–38).  Wilson alleges that (1) Boeing, (2) its employees, (3) employees of Wilson's alleged direct competitors ("Bogus Boeing Employees"), (4) the employers of those "Bogus Boeing Employees", (5) certain persons working for Wilson's competitors that Wilson claims were listed as working for Wilson ("Ghost Employees"), and (6) the "Ghost Employees'" employers "committed, orchestrated, coordinated, planned, directed, and implemented Boeing's plan to target smaller companies and entice them with the possibility of lucrative contracts only to steal the smaller companies' intellectual property and conceal evidence of the misdeeds, for which Boeing's enterprise exists."  Dkt. # 102 at 68–69 ¶¶ 356–62; *see id.* at 50 ¶ 252, 69 ¶ 362; Dkt. # 49 (sealed).

Boeing replies that these allegations are "facially implausible, as [Wilson] claims the [association-in-fact] enterprise comprises an amorphous hodgepodge of 11 companies and 43 individuals." Dkt. # 129 at 18 (citing Dkt. # 102 at 24 ¶ 103, 68–69 ¶¶ 356–359).

In *Odom v. Microsoft Corporation*, the Ninth Circuit considered the district court's Rule 12(b)(6) dismissal of a putative class action for the failure to allege an association-in-fact enterprise. 486 F.3d 541, 543 (9th Cir. 2007). James Odom claimed that Microsoft and Best Buy had violated RICO, *see* 18 U.S.C. § 1962(c), (d), alleging that Microsoft invested $200 million in Best Buy and then agreed to promote Best Buy's online store through its MSN service. *Id.* The Ninth Circuit determined that the complaint plausibly alleged that the defendants' common purpose was to increase "the number of people using Microsoft's Internet Service, and [do] so by fraudulent means." *Id.* at 552. According to the complaint, Best Buy furthered this common purpose by "distributing Microsoft Internet Trial CD[s] and conveying its customers' debit and credit card information to Microsoft." *Id.* In turn, the complaint alleged that "Microsoft then used the information to activate customer accounts." *Id.* The Ninth Circuit said that these allegations, taken as true, were enough to show that the two companies had a common purpose of increasing those using Microsoft's internet service through fraudulent means. *Id.*

Unlike in *Odom*, Wilson has not provided allegations that state a plausible claim to relief. Although Wilson has articulated a common purpose—to steal Wilson's IP so that its competitors could avoid R&D expenses while working under Boeing's direction—it has failed to allege how these enterprise participants engaged in a course of conduct. Although the FAC states, for example, that the "Bogus Boeing Employees" attended a meeting where they were wrongly identified as Boeing employees and certain "Ghost Employees" were falsely categorized in Boeing's records as being Wilson employees, these disparate allegations do not plausibly allege that all these various entities associated or were driven by a common purpose of engaging in a

course of conduct. *See Boyle v. United States*, 556 U.S. 938, 945 (2009) ("An enterprise . . . 'is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'") (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Further, to establish the existence of such an enterprise, a plaintiff must allege "'an ongoing organization, formal or informal,' and 'that the various associates function as a continuing unit.'" *See Odom*, 486 F.3d at 552 (quoting *Turkette*, 452 U.S. at 583). Similar to the deficiencies in the FAC related to a "common purpose," Wilson fails to include allegations that show an ongoing structure or organization that includes Boeing and these alleged enterprise members. Nor has Wilson included any specific factual allegations that this enterprise functioned as a continuing unit over time. *See Turkette*, 452 U.S. at 583. For these reasons, Wilson fails to state a RICO claim.[8]

2.    WCPA Claim

Boeing contends that Wilson "fails to identify . . . the statutory elements of a WCPA violation, let alone any violative conduct by Boeing." Dkt. # 120 at 31 (citing *Mou v. SSC San Jose Operating Co. LP*, 415 F. Supp. 3d 918, 929 (N.D. Cal. 2019) (dismissing with leave to amend because "just identifying a statute or regulation without alleging facts to explain how Defendants violated the statute or regulation is insufficient."). Wilson does not respond. *See* Dkt. # 128 (absence). Because Wilson fails to allege any statutory elements of a WCPA violation in the FAC, it has failed to plausibly assert a claim under this statute.

---

[8] As mentioned above, Boeing also seeks dismissal on the ground that Wilson does not allege a "pattern" of racketeering activity. Dkt. # 128 at 35–37. Because the FAC fails to allege the requisite elements of an association-in-fact enterprise, the Court does not reach this issue.

F.      Civil Conspiracy

For a civil conspiracy claim, a plaintiff must plead that "(1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy."  *Wilson v. State*, 84 Wash. App. 332, 350–51, 929 P.2d 448 (1996) (citing *Corbit v. J.I. Case Co.,* 70 Wash. 2d 522, 528–29, 424 P.2d 290 (1967)).

Boeing says that "Wilson does not allege the specifics of any such agreement, or identify any alleged conduct that constitutes anything other than normal business relations between Boeing and its contractors."  Dkt. # 120 at 31 (citing Dkt. # 102 at 73 ¶ 380).

Wilson responds that it has outlined "several acts carried out by Boeing and its co-conspirators in furtherance of the conspiracy," including:

> (1) assisting Wilson's competitors in recreating Wilson's products at a fraction of the price; (2) falsely listing employees of Wilson's competitors as individuals authorized to make management decisions for Wilson; (3) concealing Wilson involvement in the designing and manufacturing of tools to interfere with Wilson's ability to procure future work from NASA; and (4) conspiring with Oakridge Tool & Engineering [a manufacturer of certain FFTDs] to produce counterfeit goods bearing a counterfeit mark[.]

Dkt. # 128 at 38 (citing Dkt. # 102 at 24–28 ¶¶ 101–110, 115, 124–25, 128; *id.* at 42 ¶ 203; *id.* at 70, 74 ¶¶ 366–68, 388).

Boeing replies that, although these facts may support allegations of conduct in furtherance of a conspiracy, they do not plausibly allege that the parties *entered an agreement* to accomplish the object of the conspiracy.  Dkt. # 129 at 21 (emphasis added).

The Court agrees.  Wilson's allegations in the FAC do not allege that Boeing and its co-conspirators entered an agreement to accomplish the object of a conspiracy.  Although Wilson has included facts relating to Boeing's alleged conduct in furtherance of a conspiracy, the "agreement" element is missing from this claim.

G.      Fraud and Negligent Misrepresentation Claims

Wilson claims fraud and, in the alternative, brings a claim for negligent

misrepresentation.  Dkt. # 102 at 74–81 ¶¶ 391–432.

> The nine elements of fraud are: (1) representation of an existing fact; (2)
> materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the
> speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its
> falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right
> to rely upon it; and (9) damages suffered by the plaintiff.

*Stiley v. Block*, 130 Wash. 2d 486, 505, 925 P.2d 194 (1996).  "In alleging fraud . . . a party must

state with particularity the circumstances constituting fraud or mistake.  Malice, intent,

knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P.

9(b).  Rule 9(b)'s particularity requirement applies to state-law causes of action alleged in

diversity cases.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *Irving*

*Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021).  "Rule

9(b) imposes the heightened requirement so that the fraud-action defendant 'can prepare an

adequate answer from the allegations.'"  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056 (9th

Cir. 2008) (quoting *Odom*, 486 F.3d at 553).  Allegations must contain "sufficient detail" to  give

a defendant "ample notice" of the plaintiff's theory and provide the Court "some assurance that

the theory has a basis in fact."  *Id.* (quoting *Berson v. Applied Signal Tech., Inc.,* 527 F.3d 982,

989–90 (9th Cir. 2008)).

To plead a claim of negligent misrepresentation, a plaintiff must allege that: (1) the

defendant "supplie[d] information for the guidance of others in their business transactions that

was false"; (2) the defendant "knew or should have known that the information was supplied to

guide [the plaintiff] in business transactions"; (3) the defendant "was negligent in obtaining or

communicating false information"; (4) the plaintiff "relied on the false information supplied by"

the defendant; (5) the plaintiff's "reliance on the false information supplied by [the defendant]

was justified"; and (6) "the false information was the proximate cause of damages" to the

plaintiff.  *Lawyers Title Ins. Corp. v. Baik*, 147 Wash. 2d 536, 545, 55 P.3d 619 (2002); *Baker*

*Boyer Nat'l Bank v. Foust*, 6 Wash. App. 2d 375, 386, 436 P.3d 382 (2018).

The FAC alleges that in 1997, Boeing ordered FFTD-1 fittings to be used on "Gamah"

fittings on the ISS.  Dkt. # 102 at 74–75 ¶¶ 392–93.  These fittings had torque limitations of 69

feet per pound.  *Id.* at 74 ¶ 392.  Knowing of this torque limitation, Boeing engineers Chip Link

and David Williams provided incorrect instructions for use of the FFTD-1 when tightening the

ISS "Gamah" fittings, intentionally instructing individuals to incorrectly use the fitting without a

seal—when a seal was required—and to apply too much torque.  *Id.* at 75–76 ¶¶ 393–96, 398.

The FAC further alleges that this was to avoid the redesign of Boeing's fittings that would have

delayed an ISS launch, *id.* at 75 ¶ 397, and In July 2001, Link "prepared a calibration card that

instructed that the FFTD-1 only generates torque in a ratio of 7:1[,]" knowing that these

instructions were false and done to "intentionally deceive[] the astronauts, technicians using the

tool, and NASA ground control who had access to the [] instructions[.]"  *Id.* at 76 ¶ 398.

According to the FAC, these false instructions caused the "trapped fitting incident on the ISS"

and Boeing fraudulently represented to Wilson that the FFTD-1 tools failed because of Wilson's

defective design, not Boeing's "false calibration[.]"  *Id.* at 76 ¶¶ 400–02.

Boeing contends that there are four reasons why Wilson's claims for fraud and negligent

misrepresentation should be dismissed.  First, Boeing says that Wilson's allegation that Link

"prepared a calibration card that instructed" NASA to use the wrong ratio of toque on its FFTD-1

tool, *see id.* at 76 ¶ 398, cannot support its claims because Wilson did not receive this card from

Boeing and did not rely on it.  Dkt. # 120 at 33 (citing *Top Notch Sols. Inc. v. Crouse & Assocs.*

*Ins. Brokers, Inc.*, No. C17-827 TSZ, 2017 WL 5158525, at *5 (W.D. Wash. Nov. 7, 2017)

("[P]laintiffs' fraud (intentional misrepresentation) and negligent misrepresentation claims are

improperly based on statements made to third parties about plaintiffs rather than material facts represented to or concealed from plaintiffs.")).

Wilson responds that Boeing ignores its allegations that Boeing failed "to disclose the actual torque being applied to the Gamah fittings (201 ft/lbs)" and that Boeing made "affirmative statements that the trapped fittings were caused by a design or manufacturing defect attributable to Wilson." Dkt. # 120 at 33 (citing Dkt. # 102 at 76 ¶¶ 399–401; *id.* at 80 ¶ 424). The Court agrees, Wilson pleads with particularity that, in 2018 and 2019, Boeing "represented to Wilson that the FFTD-1 tools that broke resulted from Wilson's defective design when the damage was caused by Boeing's false calibration that resulted in over torquing the tools." Dkt. # 102 at 76 ¶ 401; *see* Dkt. ## 37, 51, 52, 53 (sealed).

Second, Boeing says that Wilson's allegations that it "deceived Wilson by failing to disclose the actual torque being applied to certain 'Gamah fittings' on the ISS," *see* Dkt. # 102 at 76 ¶ 399, fails because a fraud or negligent misrepresentation claim based on a failure to disclose material information is only viable "where there is a fiduciary relationship and not where the parties are dealing at arm's length." Dkt. # 120 at 33 (quoting *Rydman v. Champion Petfoods USA, Inc.*, No. 18-1578-RSM, 2020 WL 4347512, *2 (W.D. Wash. July 29, 2020)). Boeing asserts that Wilson provides conclusory allegations that a "a special relationship of trust and confidence had been developed between the parties over the course of their longstanding business relationship." *Id.* (quoting Dkt. # 102 at FAC ¶¶ 422-23). Boeing therefore concludes that "this fails Rule 9's heightened pleading requirement."[9] *Id.* at 33–34 (citing Dkt. # 102 at 10 ¶ 33, 33 ¶ 152, 41 ¶¶ 199, 202; Dkt. 109; *Rydman*, 2020 WL 4347512, at *2).

---

[9] Boeing also suggests that Wilson's allegations in the FAC that "the parties' relationship was governed by standard contracts" precludes it from pleading the requisite fiduciary duty. Dkt. # 120 at 33–34. Boeing cites *Rydman* for this proposition, but that case does not support it. Because Boeing provides no other legal theory to support this argument, the Court does not consider it.

Wilson responds that *Rydman v. Champion Petfoods USA, Inc*. "plainly establishes Washington courts *have* found a duty to disclose in circumstances where: a quasi-fiduciary relationship exists, where a special relationship of trust and confidence has been developed between the parties, or where one party is relying upon the superior specialized knowledge and experience of the other."  Dkt. # 128 at 39 (citing *Rydman*, 2020 WL 4347512, at * 6) (emphasis in original).  Wilson says that under a theory of a quasi-fiduciary relationship, "Boeing did, in fact, have a duty to disclose information related to the true cause of the trapped fitting incidents." *Id.*

In *Rydman*, the district court considered plaintiff's claim that defendant fraudulently concealed information about its premium dog food.  2020 WL 4347512, at * 2 (fraudulent concealment may be established by the nine elements of fraud or the breach of an affirmative duty to disclose a material fact).  Typically, the duty to disclose a material fact exists only where there is a fiduciary relationship and not where the parties are dealing at arm's length.  *See Tokarz v. Frontier Fed. Sav. & Loan Ass'n*, 33 Wash. App. 456, 463–64, 656 P.2d 1089 (1982); *Rydman*, 2020 WL 4347512, at *2.  Yet Washington courts have found a duty to disclose when the parties have a quasi-fiduciary relationship, such as when "a special relationship of trust and confidence has been developed between the parties" or "where one party is relying upon the superior specialized knowledge and experience of the other[.]"  *Rydman*, 2020 WL 4347512, at *2 (quoting *Favors v. Matzke,* 53 Wash. App. 789, 796, 770 P.2d 686 (1989)).

The Court agrees with Wilson.  Throughout the FAC, Wilson provides particularized facts that the parties maintained a longstanding business relationship that began on or before 1997; Wilson also alleges that it entered into the 2012 and 2014 PIAs to provide proprietary information to Boeing.  *See, e.g.*, Dkt. # 102 at 10 ¶¶ 33–35; *id.* at 33 ¶ 152.  The allegations, when taken as true and with all reasonable inferences in favor of Wilson, show that the parties

had developed "a special relationship of trust and confidence" and that they both relied on one another's "superior specialized knowledge and experience" so as to forge a quasi-fiduciary relationship.  *See Rydman*, 2020 WL 4347512, at *2.

Third, Boeing says that Wilson's allegation that "in 2018 and 2019, Boeing fraudulently represented to Wilson that the FFTD-1 tools that broke resulted from Wilson's defective design when the damage was caused by Boeing's false calibration" is conclusory and does not meet the Rule 9(b) pleading standard.  Dkt. # 120 at 34 (citing Dkt. # 102 at 76 ¶ 401).  Boeing seeks dismissal because it claims that Wilson fails to "plead the 'who, what, when, where, and how' of the misconduct alleged."  *Id.* (quoting *Benanav v. Healthy Paws Pet Ins., LLC*, 495 F. Supp. 3d 987, 994 (W.D. Wash. 2020) (quoting *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009))).

Wilson responds that "the FAC sufficiently details what Boeing communicated to and concealed from Wilson, what misrepresentations were made to Wilson and when, when the misrepresentations were made, why the misrepresentations were made, why Wilson reasonably relied on Boeing's misrepresentations, as well as when and how Wilson discovered Boeing's otherwise fraudulent conduct."  Dkt. # 128 at 39–40.

The Court disagrees.  While Wilson includes general factual allegations that "[i]n 2018 and 2019, Boeing fraudulently represented to Wilson that the FFTD-1 tools that broke resulted from Wilson's defective design[,]" this allegation and Wilson's related allegation—even when viewed in the light most favorable to Wilson—are not particularized enough to meet the heightened Rule 9(b) standard.  *See* Dkt. # 102 at 75–80 ¶¶ 394–97, 399–405, 408–12, 421–27.  But these allegations do satisfy the lower pleading standard for negligent misrepresentation.  *See Baik*, 147 Wash. 2d at 545.  Indeed, Boeing does not contend that this lack of specificity in Wilson's pleading should affect Wilson's alternative claim.

For these reasons, the Court dismisses Wilson's fraud claim, but declines to dismiss Wilson's claim of negligent misrepresentation.[10]

H.    Tortious Interference with Prospective Advantage

A party claiming tortious interference with a contractual relationship or business expectancy (or advantage) must prove five elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wash. 2d 342, 351, 144 P.3d 276 (2006) (citing *Leingang v. Pierce Cnty. Med. Bureau, Inc.,* 131 Wash. 2d 133, 157, 930 P.2d 288 (1997)).

Boeing contends that Wilson's allegations of tortious interference fail because they concern only Wilson's business relationship with Boeing.  Dkt. # 120 at (citing *Olympic Fish Prod., Inc. v. Lloyd*, 93 Wash. 2d 596, 598, 611 P.2d 737 (1980)).

Wilson responds that Boeing ignores that it has alleged that its

> relationships with prospective purchasers of Wilson's tools - Lockheed Martin, United Space Alliance, Oceaneering, and others - were unjustifiably interfered with as a result of Boeing having: (1) violated Wilson's intellectual property rights, (2) encouraged others to take credit for Wilson's work product, (3) expunging records of Wilson's accomplishments, (4) blaming Wilson for the trapped fitting, and (5) disparaging Wilson's products.

Dkt. # 128 at 40 (citing Dkt. # 102 at 81 ¶¶ 434–37).[11]

---

[10] Boeing also contends that Wilson's fraud claim fails because Wilson's "new exhibits show that [it] knew that [another manufacturer, Oakridge Tool & Engineering,] (and not Wilson) manufactured the 'counterfeit' tool." Dkt. # 120 at 34 (citing Dkt. # 102 at 77–78 ¶¶ 407–09, 412; Dkt. # 104; Dkt. # 106; *Badame v. J.P. Morgan Chase Bank, N.A.*, 641 Fed. App'x 707, 710 (9th Cir. 2016)).  As discussed, because the FAC fails to allege a fraud claim with particularity, the Court does not reach this issue.

[11] Boeing replies that Wilson still fails to allege the remaining elements of tortious interference: "(1) a valid contractual or business expectancy with any of these non-parties; (2) Boeing's knowledge of those relationships; (3) that Boeing's interference caused a breach or termination of those relationships; (4) that Boeing's interference was for an improper purpose or used improper means; or (5) damages."

1

"To establish a valid business expectancy, courts require something less than a binding

2

enforceable contract." *Scymanski v. Dufault*, 80 Wash. 2d 77, 83, 491 P.2d 1050 (1971).

3

Instead, a "valid business expectancy includes any prospective contractual or business

4

relationship that would be of pecuniary value." *Newton Ins. Agency & Brokerage, Inc. v.*

5

*Caledonian Ins. Grp. Inc.*, 114 Wash. App. 151, 158, 52 P.3d 30 (2002).  "Washington courts

6

require a plaintiff to show only that its 'future business opportunities are a reasonable

7

expectation and not merely wishful thinking.'"  *Greensun Grp., LLC v. City of Bellevue*, 7 Wash.

8

App. 2d 754, 768–69, 436 P.3d 397 (2019) (quoting *Life Designs Ranch, Inc. v. Sommer*, 191

9

Wash. App. 320, 337, 364 P.3d 129 (2015); *Woods View II, LLC v. Kitsap County*, 188 Wash.

10

App. 1, 30, 352 P.3d 807 (2015)).

11

Here, the FAC does not show that Wilson expected to enter into a prospective business

12

relationship with Lockheed Martin, United Space Alliance, or Oceaneering, beyond pleading

13

general statements that it hoped to someday obtain these prospective customers in the aerospace

14

industry.  *See* Dkt. # 102 at 81 ¶ 435.  Without plausible allegations establishing this element,

15

Wilson's claim for tortious interference fails.

16

I.      Breach of Contract

17

Wilson alleges that after the parties signed the 2014 PIA, Boeing violated its implied duty

18

of good faith and fair dealing "by failing to refrain from the bad acts . . . that prevented Wilson

19

from receiving the full benefit and protections promised under the 2014 PIA."  Dkt. # 102 at 82–

20

83 ¶¶ 444–49.  Wilson points to times when Boeing stole, infringed, and impermissibly shared

21

its intellectual property.  *Id.* at 83 ¶ 450(A–D).

22

23

24

Dkt. # 129 at 23.  But because these arguments were raised for the first time in the reply brief, the Court does not consider them.  *Cf. Cedano-Viera v. Ashcroft*, 324 F.3d 1062, 1066 n.5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

Under Washington law, every contract has "an implied duty of good faith and fair dealing" that "obligates the parties to cooperate with each other so that each may obtain the full benefit of performance." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 180 Wash. 2d 102, 112–13, 323 P.3d 1036 (2014) (quoting *Badgett v. Sec. State Bank,* 116 Wash. 2d 563, 569, 807 P.2d 356 (1991)). Still, "the implied covenant of good faith and fair dealing cannot add or contradict express contract terms and does not impose a free-floating obligation of good faith on the parties." *Id.* at 113. The duty of good faith and fair dealing arises "when the contract gives one party discretionary authority to determine a contract term." *Id.* (citing *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,* 86 Wash. App. 732, 738, 935 P.2d 628 (1997); *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 498 (Colo. 1995) ("The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time.")). "[G]ood faith *limits* the authority of a party retaining discretion to interpret contract terms; it does not provide a blank check for that party to define terms however it chooses." *Id.* (quoting *Scribner v. Worldcom, Inc.,* 249 F.3d 902, 910 (9th Cir. 2001) (emphasis in original)).

Boeing says that Wilson's contract claim fails for two reasons. First, Boeing contends that Wilson identifies no discretionary provision of the 2014 PIA and that, when the alleged conduct is "untethered from the 2014 PIA's terms, [it] cannot sustain a claim for breach of the duty of good faith and fair dealing." Dkt. # 120 at 36.

Wilson responds that Boeing

breached the implied duty of good faith and fair dealing by: (1) inviting Wilson's direct competitors to a confidential meeting disguised as Boeing employees; (b) requesting Wilson's proprietary information via email with the Bogus Boeing Employees cc'ed with false Boeing email addresses; (c) deliberately failing to inform Wilson the Bogus Boeing Employees were Wilson's competitors; and (4) failing to protect Wilson's proprietary information.

ORDER RE: MOTION TO DISMISS - 33

Dkt. # 128 at 43 (citing Dkt. # 102 at ¶ 450); *see* Dkt. # 102 at 25–26 ¶ 102–05, 107–08; Dkt. # 14 (sealed).  Wilson also asserts that "Boeing had an express contractual duty to protect Wilson's proprietary information 'from misuse or unauthorized disclosure by exercising reasonable care.'" Dkt. # 128 at 44 (citing Dkt. # 1-3 at 4 ¶ 6).

Paragraph six of the 2014 PIA states:

> **Duty of Care.**  A receiving party will satisfy its obligations to protect Proprietary Information from misuse or unauthorized disclosure *by exercising reasonable care*.  Such care will include protecting Proprietary Information using those practices the receiving party normally uses to restrict disclosure and use of its own information of like importance.  A receiving party will not be liable if it accidentally discloses Proprietary Information *while exercising reasonable care*, provided that, upon discovery of such disclosure, the receiving party attempts to retrieve the Proprietary Information and reviews its practices to attempt to prevent any further accidental disclosures.

Dkt. # 1-3 at 4 (emphasis added).  This provision requires Boeing to exercise reasonable care in protecting Wilson's proprietary information from misuse or unauthorized disclosure, precisely what Wilson alleges Boeing did not do.  The duty of good faith and fair dealing arises "when the contract gives one party discretionary authority to determine a contract term." *Rekhter*, 180 Wash. 2d at 113.  Because the term "reasonable care" is not defined in the 2014 PIA, and because this paragraph does not provide specific directives to Boeing regarding what it must do to reasonably protect such information, the provision confers discretionary authority to Boeing to determine what behavior and actions fit within the category of "reasonable care."  The Court therefore declines to dismiss on this ground.

Second, Boeing states that Wilson's claim fails because "[t]he duty of good faith does not trump contract terms."  Dkt. # 120 at 36 (quoting *Tamblyn v. Aurora Loan Servs*., No. C11-5538 RJB, 2012 WL 13020096, at *3 (W.D. Wash. Apr. 30, 2012)).  Boeing contends that any allegations related to the "Bogus Boeing Employees" should be dismissed because they were contract labor personnel and the sharing of proprietary information with this group was expressly

authorized by the 2014 PIA.  Dkt. # 1-3 at 3 ¶ 3 ("In the event that a receiving party uses contract labor in the operation of its business and the receiving party needs to disclose the Proprietary Information to such *contract labor personnel* to accomplish the purposes of this Agreement, release and disclosure are permitted *provided that the contract labor personnel are under obligations to hold such information in confidence* under terms and conditions at least as restrictive as the terms and conditions of this Agreement.") (emphasis added).  Boeing also contends that "by filing the patent applications, Wilson had put the FFTD-3's design in the public domain," and therefore "to the extent Wilson is alleging that Boeing's disclosure of the FFTD-3 to Boeing's contractors at the October 2014 meeting violated a duty of good faith and fair dealing, this claim fails because the 2014 PIA authorized this disclosure *and* the FFTD-3's design was not considered confidential per the PIA's own terms."  Dkt. # 120 at 36 (emphasis in original).

As for whether the "Bogus Boeing Employees" were contract labor personnel, this is a fact inquiry inappropriate for consideration at the motion to dismiss stage.  The Court declines to dismiss on this ground.

As for the argument that certain information related to the FFTD-3 was already in the public domain through patent applications, Wilson responds that the information disclosed in its patent applications was not publicly accessible until March 2, 2017.  Dkt. # 128 at 20.

Paragraph 7(d) of the 2014 PIA states that the agreement does not restrict the disclosure or use of information that otherwise qualifies as proprietary information if it "was already in the public domain when [Wilson] disclosed it to [Boeing]; entered the public domain after the originating party disclosed it under this Agreement, but through no fault of the receiving party; or became generally known, but through no fault of the receiving party."  Dkt. # 1-3 at 4 ¶ 7(d).

Construing the complaint in the light most favorable to Wilson, there is no indication that filing a public patent application immediately renders the contents of that application a part of the "public domain."  Indeed, Wilson says that its August 28, 2014, patent application was not made public until March 2, 2017.  Dkt. # 128 at 20–21; *see* Dkt. # 88-4 at 2; *see supra* Section III.D.n7 (taking judicial notice of publicly available patent documents).  Because Wilson's patent application was not publicly available until at least March 2017, the application does not preclude the confidentiality of the FFTD-3's design per the terms of the PIA.

For these reasons, the Court declines to dismiss Wilson's breach of contract claim on these grounds.

J.      Unjust Enrichment

In the alternative to Wilson's breach of contract claim, Wilson brings an unjust enrichment claim against Boeing.  Dkt. # 102 at 85–86 ¶ 461–67.  Unjust enrichment is a quasi-contract claim, which is based on the "fundamental principle of justice that no one should be unjustly enriched at the expense of another."  *Lake Limerick Country Club v. Hunt Mfg. Homes, Inc.,* 120 Wash. App. 246, 261, 84 P.3d 295 (2004) (quoting *Milone & Tucci, Inc. v. Bona Fide Builders, Inc.*, 49 Wash. 2d 363, 367, 301 P.2d 759 (1956)).  "Unjust enrichment, thus, is the method of recovery for the value of a benefit retained absent any contractual relationship because notions of fairness and justice require it."  *Peterson v. Kitsap Cmty. Fed. Credit Union*, 171 Wash. App. 404, 430, 287 P.3d 27 (2012) (citing *Young v. Young,* 164 Wash. 2d 477, 484, 191 P.3d 1258 (2008)).  "That a party has been benefited or enriched is not sufficient to justify recovery; the doctrine of unjust enrichment applies only if the circumstances make it *unjust* for the party to keep the benefit without paying."  *Id.* (emphasis in original) (citing *Chandler v. Wash. Toll Bridge Auth.,* 17 Wash. 2d 591, 601, 137 P.2d 97 (1943)).

Boeing says that Wilson may not bring an unjust enrichment claim because there were two valid contracts—the 2012 PIA and 2014 PIA—that governed the relationship between the parties. Dkt. # 120 at 37 (citing *Pengbo Xiao v. Feast Buffet, Inc.*, 387 F. Supp. 3d 1181, 1191 (W.D. Wash. 2019)). Boeing contends that "Wilson, as a party to a valid contract, 'may not claim unjust enrichment on the same matters governed by that contract.'" *Id.* (quoting *Empire Health Found. v. CHS/Cmty. Health Sys. Inc.*, 370 F. Supp. 3d 1252, 1262–63 (E.D. Wash. 2019)). Boeing states that "[r]egardless of whether Wilson pleads its claim 'in alternative to the contractual remedies sought, this does not change the fact that a contract exists between the parties'" and concludes that this claim should be dismissed. *Id.* (quoting *Digit. Mentor*, 2018 WL 6724765, at *12).

Wilson responds that Boeing's argument fails because "Washington courts permit a party to simultaneously pursue contract and quasi-contractual claims." Dkt. # 128 (citing *Bort v. Parker*, 110 Wash. App. 561, 580, 42 P.3d 980 (2002). But "[u]njust enrichment is the method of recovery for the value of the benefit retained *absent* any contractual relationship because notions of fairness and justice require it." *Young*, 164 Wash. 2d at 484 (emphasis added); *Peterson*, 171 Wash. App. at 430. Whether Wilson brings its unjust enrichment claim in the alternative to its breach of contract claim does not change the fact that two valid contracts bound the parties. *See Digit. Mentor*, 2018 WL 6724765, at *12 (W.D. Wash. Dec. 21, 2018); *Empire Health Found.,* 370 F. Supp. 3d 1252 at 1263 ("But the parties have a valid, binding contract and [plaintiff's] claim that [defendant] unjustly enriched itself concerns the same matters governed by that contract."); Dkt. # 120 at 35–36 (Boeing recognizing the valid contract between the parties and seeking dismissal of Wilson's breach of contract claim on other grounds). Therefore, Wilson may not seek relief under a theory of unjust enrichment as an alternative to a remedy under either of these contracts.

1

## IV

### CONCLUSION

For all these reasons, the Court GRANTS in part and DENIES in part the motion to dismiss:

- As for Wilson's copyright infringement claim, the Court GRANTS in part and DENIES in part the motion.  The Court DISMISSES the claims related to the '919 and '216 Works without prejudice.

- As for Wilson's misappropriation of trade secrets claim as to the FFTD-3, the Court GRANTS in part and DENIES the motion.  The Court DISMISSES without prejudice all claims alleged under the DTSA and, only with respect to trade secrets included in Wilson's patent application, DISMISSES the WUTSA claim with prejudice.  *See supra* Section III.B.1.

- As for Wilson's misappropriation of trade secrets claim as to the Dreamliner Bolting Tool, the Court DENIES the motion.

- As for Wilson's Lanham Act claim, the Court GRANTS the motion and DISMISSES the claim without prejudice.

- As for Wilson's RICO and WCPA claims, the Court GRANTS the motion and DISMISSES these claims without prejudice.

- As for Wilson's civil conspiracy claim, the Court GRANTS the motion and DISMISSES the claim without prejudice.

- As for Wilson's fraud claim, the Court GRANTS the motion and DISMISSES the claim without prejudice.

- As for Wilson's negligent misrepresentation claim, the Court DENIES the motion.

ORDER RE: MOTION TO DISMISS - 38

- As for Wilson's tortious interference with prospective advantage claim, the Court GRANTS the motion and DISMISSES the claim without prejudice.
- As for Wilson's breach of contract claim, the Court DENIES the motion.
- As for Wilson's unjust enrichment, the Court GRANTS the motion and DISMISSES the claim without prejudice.

The Court GRANTS Plaintiff leave until August 30, 2024, to file a second amended complaint; such leave is limited to the causes of action already brought in the FAC.[12]

Dated this 1st day of August, 2024.

John H. Chun
United States District Judge

---

[12] Assuming dismissal all of Wilson's federal law claims, Boeing asks the Court to decline jurisdiction over Wilson's remaining state-law claims.  Dkt. # 120 at 37.  Because certain federal claims—copyright infringement and misappropriation of trade secrets—remain, the Court need not reach this issue.

ORDER RE: MOTION TO DISMISS - 39