UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILSON AEROSPACE LLC,<br><br>               Plaintiff,<br><br>   v.<br><br>THE BOEING COMPANY INC,<br><br>               Defendant. | CASE NO. 2:23-cv-00847-JHC<br><br>ORDER GRANTING MOTION FOR RECONSIDERATION (DKT. # 133) |

# I

## INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Reconsideration. *See* Dkt. # 133. Plaintiff Wilson Aerospace LLC contends that the Court erroneously dismissed with prejudice Wilson's misappropriation of trade secrets claim associated with the third iteration of its specialty "Fluid Fitting Torque Device" (FFTD-3) under the Washington Uniform Trade Secrets Act (WUTSA). *See* Dkt. # 132 at 15–16, 38; *see generally* Dkt. # 133. For the reasons below, the Court GRANTS the motion.

## II

### Background

On August 1, 2024, the Court granted in part and denied in part Defendant The Boeing Company's motion to dismiss.[1]  *See* Dkt. ## 132, 120 (redacted).  The Court dismissed Wilson's misappropriation of trade secrets claim related to the FFTD-3 under the Defend Trade Secrets Act (DTSA)[2] and, only for trade secrets included in Wilson's FFTD-3 patent, dismissed Wilson's WUTSA claim with prejudice.  Dkt. # 132 at 13–17, 38.  In reaching this conclusion, the Court considered whether Wilson had taken reasonable measures to protect the trade secrets included in the FFTD-3 patent application.  The Court concluded

> To meet the definition of a trade secret, the DTSA and WUTSA both require the owner of a trade secret to take reasonable steps to keep its information secret.  *See* 18 U.S.C. § 1839(3)(A) (to constitute a trade secret, an owner must take "reasonable measures to keep such information secret"); RCW 19.108.010(4)(b) (a trade secret "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy").  It follows that a patent applicant's failure to request the nonpublication of the application means that they have not taken reasonable steps to maintain the confidentiality of the contents of the application.  As a result, the information divulged in that application does not fit the definition of a trade secret.  *See Foster v. Pitney Bowes Corp.*, 549 F. App'x 982, 989 (Fed. Cir. 2013) (finding that plaintiff had "the option of filing a nonpublication request with his provisional patent application but chose not to do so" and therefore the ideas in his published patent application were not subject to "reasonable efforts" to maintain confidentiality); *Fleet Engineers, Inc. v. Mudguard Techs., LLC*, 761 F. App'x 989, 994 (Fed. Cir. 2019) (placing information in a patent application is a failure to use reasonable efforts to maintain secrecy).  Here, David Wilson Jr. had the option of filing a nonpublication request in August 2014, and when he did not, he failed to take reasonable steps to keep the information in the patent secret.  Whether the information he chose to publish became public on a certain date is not a central inquiry as to his "reasonable efforts" to maintain the confidentiality of these trade secrets.

Dkt. # 132 at 16.

---

[1] This order incorporates the factual background as summarized in the Order Re: Motion to Dismiss.  *See* Dkt. # 132 at 2–5.

[2] The previous order has a typographical error as to the "DTSA" acronym.  *See* Dkt. # 132 at 13 ("Defense Technology Security Administration").

Based on the above reasoning, the Court dismissed with prejudice the remaining trade secret misappropriation claims under WUTSA that were contained within Wilson's August 2014 FFTD-3 provisional patent application.  *See id.* at 38.  Wilson now moves the Court to reconsider this dismissal.  Dkt. # 133.

## III
### DISCUSSION

Wilson requests that the Court reconsider its order "only with respect to its FFTD-3 trade secret claims arising under WUTSA that were dismissed with prejudice and provide Wilson leave to replead said claims[.]"  Dkt. # 133 at 2.  Wilson contends that the Court erred when it concluded that Wilson failed to take reasonable measures to protect trade secrets contained in its patent application because the Court should not have relied on two factually distinguishable cases: *Foster v. Pitney Bowes Corp.*, 549 F. App'x 982 (Fed. Cir. 2013) and *Fleet Engineers, Inc. v. Mudguard Techs., LLC*, 761 F. App'x 989 (Fed. Cir. 2019).  Wilson says that these authorities are inapt because in those cases "the acts constituting misappropriation were alleged to have occurred *after* the subject patent application was published, whereas here, Wilson has alleged the trade secret misappropriation commenced in 2014, which predates the time in which Wilson's patent applications became publicly accessible."  Dkt. # 133 at 5 (emphasis in original) (citing Dkt. # 102 at 24–25 ¶¶ 100–104).

Wilson contends that it filed its August 2014 FFTD-3 provisional patent with no expectation of immediate publication, relying on the applicable regulations and statutes, which provide that a provisional patent application becomes publicly available through the publication of a subsequent non-provisional patent.  *Id.* at 6 (citing 35 U.S.C. § 122(b)(2)(A)(iii); 37 C.F.R. § 1.14(a)(1)(iv); *ICU Med., Inc. v. B. Braun Med., Inc.*, 224 F.R.D. 461, 462 (N.D. Cal. 2002)).

According to Wilson, "[g]iven the expectation that a *provisional* patent application would not be published, and that a typical *non-provisional* patent application will not publish until 18 months from the earliest filing date for which a benefit is sought, Wilson demonstrated reasonable efforts by obtaining a confidentiality agreement in the 2014 PIA[.]" *Id.* at 7 (emphasis in original). Wilson states that the information in its FFTD-3 provisional and non-provisional patent applications remained confidential until March 2, 2017, when its non-provisional patent application was published. *Id.* at 3 (citing 35 U.S.C. § 122(a), (b)(1)(A), (b)(2)(A)(iii)). Still, Wilson concedes that its "trade secrets enjoyed under the 2014 PIA, up to the date of publication of its *non-provisional* patent application, necessarily forbade Boeing from misappropriating said trade secrets during that same time period." *Id.* at 4 (emphasis in original).

Boeing takes issues with Wilson's assessment of *Foster* and *Fleet Engineers*. Dkt. # 135 at 7–9. It contends that these two cases focus on the fact that alleged trade secret related information was placed in a patent application when filed and "gave no indication that the timing of the publication would make any difference." *Id.* at 9.

The parties agree that once information is placed in the public domain via a published patent it is no longer a trade secret because it is not "subject of efforts that are reasonable under the circumstances to maintain its secrecy." *See* RCW 19.108.010(4)(b); Dkt. # 133 at 4; *see generally* Dkt. # 135. The parties disagree, however, as to whether the information in a patent application loses its designation as a trade secret upon the filing of a provisional patent application or upon the publishing of the related non-provisional patent. Wilson asserts that its "WUTSA claims related to the FFTD-3 trade secrets are actionable up to the March 2, 2017 publication date" of the non-provisional patent application, while Boeing contends that Wilson's claims are actionable until August 28, 2014, the date on which Wilson filed its provisional patent

ORDER GRANTING MOTION FOR
RECONSIDERATION (DKT. # 133) - 4

application and failed to request non-publication of that application. *See* Dkt. # 133 at 5; Dkt. # 135 at 6.

Upon further review, the Court agrees with Wilson. In *Foster*, inventor Frederick Foster filed a provisional patent application in early May 2007, which detailed his concept for a virtual post office box. 549 F. App'x at 984. A year later, on May 30, 2008, Foster filed a related non-provisional patent application. *Id.* After filing his patent application, Foster began to discuss his concept with the United States Postal Service (USPS) and then in September 2009—long after the United States Patent and Trademark Office (USPTO) had published Foster's non-provisional patent application—Foster contacted the President of Postal Relations at Pitney Bowes regarding his patented idea. *Id.* In early 2011, Pitney Bowes launched a website related to Foster's patented concept and Foster sued Pitney Bowes, USPS, and other John Doe defendants for trade secret misappropriation.

Pitney Bowes moved to dismiss Foster's misappropriation of trade secret claims under Federal Rule of Civil Procedure 12(c). *Id.* at 985. The district court noted that Foster's patent application became public on December 4, 2008, and that "[w]hen the patent application was published, it became a matter of public record" and the trade secrets contained in it were "available to anyone who reviewed the application." *Foster v. Pitney Bowes Corp.*, No. CIV.A. 11-7303, 2013 WL 487196, at *6 (E.D. Pa. Feb. 8, 2013), *supplemented,* No. CIV.A. 11-7303, 2013 WL 1500683 (E.D. Pa. Apr. 12, 2013). The court concluded that Foster's failure to prevent publication meant that he failed to take reasonable steps to maintain the secrecy of his virtual mailbox concept; when the USPTO published his application on December 4, 2008, the patent's

contents lost its designation as a trade secret because it became "readily ascertainable by proper means." *Id.* at *7.[3]

The Federal Circuit affirmed this ruling. *See Foster*, 549 F. App'x at 989 ("The court correctly pointed out that Mr. Foster had had the option of filing a nonpublication request with his provisional patent application but chose not to do so, and that the ideas in his *published* patent application therefore were not subject to reasonable efforts to maintain confidentiality." (emphasis added)).

In *Fleet Engineers*, defendant Tarun Surti appealed the dismissal of his misappropriation of trade secrets counterclaim. Surti was the president of Mudguard Technologies and inventor of a special mudflap that prevented the spray from a wheel of a vehicle on a wet roadway. 761 F. App'x at 990. In July 2010, Mudguard and Fleet Engineers, a company that sells after-market automobile products, entered into a distribution agreement for Surti's mudflap. *Id.* A few months later, this agreement was terminated, and on March 3, 2011, Surti's non-provisional mudflap patent application was published; in February 2012, Fleet Engineers released its own "Aeroflap" mudflap product. *Id.* at 990, 994. A few months later, in April 2012, the USPTO issued Surti a mudflap patent and Surti contacted counsel, claiming that the Aeroflap infringed the claims of his own patent. *Id.* at 991. Fleet Engineers moved for a declaratory judgment of noninfringement, along with other claims, and Surti responded with counterclaims for patent infringement, breach of contract, and misappropriation of trade secrets. *Id.* The district court granted summary judgment, determining that Fleet Engineers did not misappropriate Surti's trade secrets. *Id.* The Federal Circuit affirmed, holding in pertinent part, that any information

---

[3] In *Foster*, the Eastern District of Pennsylvania and the Federal Circuit applied Pennsylvania trade secrets law, which is virtually identical to the Washington law applicable here. *Compare* RCW 19.108.010(4), *with* 12 Pa. Stat. and Consol. Stat. Ann. § 5302.

ORDER GRANTING MOTION FOR
RECONSIDERATION (DKT. # 133) - 6

disclosed in a published patent application could not be considered a trade secret because that information was not subject to "efforts that are reasonable under the circumstances" to maintain its secrecy. *Id.* at *994.[4]

In both *Foster* and *Fleet Engineers*, the trade secret misappropriation allegations related to events that occurred *after* the non-provisional patent applications in question had been published. But here, Wilson alleges that Boeing engaged in misappropriation of trade secrets before its FFTD-3 non-provisional patent application was published on March 2, 2017. Although the Court relied on the broad language gleaned from *Foster* and *Fleet Engineers* in its previous order, *see* Dkt. # 132 at 16, it now notes that neither case deals with misappropriation of trade secret allegations that occurred *after* the filing of a provisional patent application, but *before* information in its related non-provisional filing was made publicly accessible by USPTO publication. Considering that Washington law requires a trade secret to be the subject of efforts that "are reasonable *under the circumstances* to maintain its secrecy[,]" RCW 19.108.010(4)(b) (emphasis added), and the contents of a patent application are kept confidential until publication, *see* 35 U.S.C. § 122(a), (b)(1)(A), (b)(2)(A)(iii), it follows that the contents of the FFTD-3 provisional and non-provisional patent applications were subject to reasonable efforts under the circumstances to maintain their secrecy up until March 2, 2017—the date of the non-provisional patent application's publication—and not when Wilson filed its initial provisional patent application.

---

[4] In *Fleet Engineers*, the Federal Circuit applied Michigan law, which resembles the Washington trade secrets law applicable here. *Compare* RCW 19.108.010(4), *with* Mich. Comp. Laws § 455.1902(d)(ii).

ORDER GRANTING MOTION FOR
RECONSIDERATION (DKT. # 133) - 7

Therefore, Wilson's motion for reconsideration is well taken. Wilson stated a claim for acts of trade secret misappropriation as to the FFTD-3 alleged to have occurred before March 2, 2017, the date of the Wilson's FFTD-3 non-provisional patent application publication.

## IV
### CONCLUSION

For these reasons, the Court GRANTS Wilson's motion for reconsideration. Accordingly, the Court VACATES its previous dismissal of Wilson's claim of misappropriation of FFTD-3 trade secrets under WUTSA. *See* Dkt. # 132 at 16, 38. The Court GRANTS Wilson leave until September 18, 2024, to file a third amended complaint and replead this claim; such leave is limited to the cause of action discussed above.

Dated this 4th day of September, 2024.

John H. Chun
United States District Judge