UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILSON AEROSPACE, LLC,

    Plaintiff,

vs.

THE BOEING COMPANY, INC.,

    Defendant.

CASE NO. 2:23-CV-00847-JHC

**PROTOCOL REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION**

Plaintiff Wilson Aerospace, LLC and Defendant The Boeing Company (together, the "parties") hereby submit the following protocol regarding the discovery of electronically stored information ("ESI") in this matter in compliance with the Court's June 12, 2025 Order requiring the parties to file a revised protocol adopting Plaintiff's proposals. Dkt. # 156.

The following provisions shall govern the discovery of ESI in this matter:

**A.  General Principles**

1.  An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.        As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

3.        Nothing in this Order shall preclude the producing party from producing additional relevant and responsive materials beyond those identified pursuant to the procedure described herein. Where appropriate, relevant and responsive non-privileged documents and ESI that are easily identifiable and segregable shall be collected and produced without the use of the procedure described herein. The discovery requests (in accordance with and subject to any limits or objections supported by the Federal Rules of Civil Procedure, the Local Rules, and any relevant orders of the Court) shall govern the scope of documents and ESI to be produced, subject to any agreements reached during the parties' conferral, and otherwise search terms do not supplant discovery requests. The parties shall produce any relevant and responsive, non-privileged documents, to the extent they exist and can be located after a reasonably diligent search of relevant custodians and shared platforms, upon which the parties shall meet and confer.

4.        The parties agree that the producing party is under no obligation to identify the request for production to which a particular document is responsive, nor is the producing party obligated to identify (by Bates Numbers or otherwise) which documents are being produced in response to a particular request for production. Nonetheless, document and ESI productions must be "rationally organized" so that the requesting party "may readily identify documents, including

ESI, that are responsive to their production requests." *Wilson v. Washington*, 2017 WL 518615, *2 (W.D. Wash. Feb. 8, 2017) (quoting *City of Colton v. Am. Promo. Events, Inc.*, 277 F.R.D. 578, 585 (C.D. Cal. 2011)).

5. The parties agree that neither party shall be obligated to produce ESI created on or after June 6, 2023. In the event that a requesting party believes it is entitled to specific ESI that post-dates June 6, 2023, the requesting party shall identify the specific ESI in a written discovery request, and the parties shall meet and confer in good faith regarding the request.

6. The parties agree that neither party shall be obligated to collect ESI maintained on mobile phones or tablets, absent a showing of good cause.

**B.  ESI Disclosures**

Contemporaneously with documents produced in response to requests for production, or at a later time if agreed to by the parties, each party shall disclose:

1. <u>Custodians.</u> The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name and title. The disclosed custodians within this section shall not exceed twenty, though nothing herein shall obligate a party to identify a specific number of custodians beyond those most likely to have discoverable ESI in their possession, custody, or control.

2. <u>Non-custodial Data Sources.</u> A list of non-custodial sources of aggregate data or data held in common (*e.g.*, shared drives, project-specific servers), if any, likely to contain discoverable ESI.

3. <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, that a party believes (based on a reasonably diligent inquiry from its document custodians) is likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and,

for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.     Inaccessible Data. A list of data sources, if any, that a party believes (based on a reasonably diligent inquiry from its document custodians) is likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B). This includes responsive data sources (based on a reasonably diligent inquiry from its document custodians) that once existed, but was deleted, lost, destroyed, or is no longer retrievable. The party shall notify the requesting party and explain where and when the ESI was last retrievable in its original form and the reason for the deletion or destruction of the ESI.

5.     U.S. Export Controls and foreign data privacy laws.  Nothing in this Order is intended to prevent either party from complying with the requirements of United States laws and regulations relating to export controls or arms trafficking; nor with any foreign power's data privacy laws, *e.g.*, the European Union's General Data Protection Regulation (GDPR) (EU) 2016/679.  The parties agree to meet and confer before including custodians or data sources subject to such laws in any ESI or other discovery request.

6.     Additional Custodians and Sources.  No later than three months prior to the close of fact discovery, a receiving party may identify additional custodians or non-custodial data sources that may have relevant information related to the claims or defenses to be collected, searched, and/or produced. If a producing party declines to include in the collection process any custodian or data source identified by another party, the matter shall be disclosed promptly to the requesting party and may be submitted to the Court for determination within two weeks of such disclosure.

C. **ESI Discovery Procedures**

1. <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2. <u>Search methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies,[1] before any such effort is undertaken. The parties shall continue to confer in good faith should a party wish to revise the search methodology.

    a. <u>Prior to running searches</u>:

        i. Within 14 days of submitting responses and objections to any request for production, the producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information (the producing party's "Initial Search Terms or Queries"). The producing party must provide unique hit counts for each search query. The producing party shall make a good faith effort to propose Initial Search Terms or Queries and data sources proportional to each of the requesting party's requests for production.

---

[1] If the producing party wishes to use to use technology assisted review ("TAR") (including, but not limited to, predictive coding and other forms of machine learning) to filter responsive and non-responsive documents, the parties will meet and confer about the use of such technologies before they are applied to attempt to reach reasonable agreement in advance of their use. Either party may in good faith request reasonable, nonprivileged, non-work-product information about the software and methodology used for the review sufficient to evaluate the reasonableness of the review.

    ii.  Within 14 days after disclosure, the parties may meet and confer, in good faith, regarding search terms and custodians. If the requesting party objects to the sufficiency of the producing party's proposed custodians or search terms, the requesting party may propose reasonable good faith modifications to the producing party's Initial Search Terms or Queries or custodians. The requesting party shall make a good faith effort to limit Initial Search Terms or Queries and data sources such that they are proportional to each of the requesting party's requests for production. Any disputes over additional custodians or search terms that cannot be resolved between the parties during meet and confer may be presented to the Court.

    iii.  The following provisions apply to search terms or queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (e.g., "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (e.g., "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word.

    iv.  The following provisions apply to disputed search terms. If the producing party contends that additional search terms proposed by the requesting party would recall an excessive number of documents ("Disputed Search Terms"), the producing party will provide a Disputed Search Term hit list or hit report after global de-duplication. The list or report should include the number of documents that hit on each term, the number of unique documents that hit on each Disputed Search Term (documents that hit on a particular term and no other term on the list), and the total number of documents that would be returned by using the proposed search term list (including families). A search term that returns more than 1,500 unique

documents, excluding families, may be identified by the producing party and the parties shall meet and confer regarding whether the term is overbroad. With respect to any search term for which the producing party believes there exists a modification that will reduce the number of irrelevant documents returned by the search term, the producing party will meet and confer with the requesting party to discuss, in good faith, any such modification. For any search term that the producing party believes is burdensome, overly broad, or objectionable, and for which there does not appear to be any modification that would resolve such issues, the producing party will meet and confer with the requesting party to discuss, in good faith, its objections to such search term. As part of that process, the producing party will, upon request, provide the requesting party with quantitative data demonstrating the issues.

3.  <u>Direct Collection</u>. The parties shall timely confer to attempt to reach agreement on the appropriateness of any direct collection of data. Nothing herein shall require a party to produce data in a format other than the format the party keeps data in the ordinary course of business. The parties shall continue to cooperate in revising the appropriateness of the direct collection.

4.  <u>Format</u>. ESI will be produced in accordance with and in a format referenced in the attached Appendix A.

5.  <u>De-duplication</u>. The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process must be tracked in a duplicate/other custodian field in the database load file as referenced in Appendix A. If the producing party chooses not to de-duplicate their ESI production, it must notify the requesting party.

6.  <u>Email Threading</u>. The parties may use analytics technology to perform email thread analysis to identify email threads and need only produce the unique most inclusive copy and related

family members and may exclude lesser inclusive copies. "Email thread analysis" means that where multiple email messages are part of a single chain or thread, a party is only required to produce the most inclusive message ("Last In Time Email") and need not separately produce earlier, less inclusive email message or thread members that are fully contained within the Last In Time Email. An earlier email is fully contained in the Last In Time Email only if the Last In Time Email includes all previous emails, including attachments and identical senders and recipients, on the thread. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages. For avoidance of doubt, if a thread member contains any additional data that is not contained in the Last In Time Email (including without limitation attachments or BCC recipients), it is not a less inclusive email and must be separately produced. Where a Last In Time Email is produced, the producing party will include metadata corresponding to the following metadata fields for each of the earlier thread members fully contained within the Last In Time Email: Sender, Recipient, CC, and BCC. Upon reasonable request, the producing party will produce a less inclusive copy.

7. <u>Metadata fields.</u> The parties agree that only the metadata fields referenced in the attached Appendix A need be produced, and only to the extent it is reasonably accessible and non-privileged. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

8. <u>Responsiveness</u>. The fact that a document may have been retrieved by application of agreed upon search terms shall not prevent any party from withholding from production such document for lack of responsiveness, privilege, or other permissible objection. Notwithstanding the foregoing, to the extent any party identifies responsive ESI or documents not hit upon by the

filters noted above, all such non-privileged ESI and documents must be produced, subject to the parties' objections to discovery requests.

9. <u>Junk Files</u>. During the ESI extraction process, junk files, which are non-responsive embedded objects such as logos and social media icons, may be extracted from emails into separate files. The parties agree that, to the extent a party can identify the junk files through, for example, search terms within the junk file or the document extension, those junk files do not need to be reviewed or produced by the producing party.

10. <u>Confidentiality of Produced ESI</u>. Any responsive non-privileged ESI that is produced shall be produced pursuant to the terms of the Protective Order to be entered by the Court. Any objections to production shall otherwise be made pursuant to the Federal Rules of Civil Procedure.

**D.  Preservation of ESI**

The parties acknowledge that they have a legal obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1. Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, the requesting party's Fed. R. Civ. P. 26(b)(2)(B) right to move to compel the production of potentially responsive not readily accessible data is preserved, and the parties shall preserve all discoverable ESI in their possession, custody, or control.

2. Except as otherwise agreed by the parties, the parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a

particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made.

    3.    Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

        a.    Deleted, slack, fragmented, or other data only accessible by forensics.

        b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

        c.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

        d.    Data in metadata fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

        e.    Back-up data that are duplicative of data that are more accessible elsewhere.

        f.    Server, system or network logs.

        g.    Data remaining from systems no longer in use that is unintelligible on the systems in use.

    4.    The parties shall not be obligated under this agreement to produce deleted ESI lost due to the routine, good-faith operation of an ESI system, before the date upon which the duty to preserve ESI arose.

**E.    Privilege**

    1.    A producing party shall create a privilege log of all documents fully withheld from production on the basis of a privilege or protection, unless otherwise agreed or excepted by this Agreement and Order. Privilege logs shall include a unique identification number for each document, the basis for the claim (attorney-client privileged or work-product protection, or other basis for privilege), an indication whether the document has been redacted or withheld, and a brief description of the basis for the claim(s) of privilege. For ESI, the privilege log may be generated

using available metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should the available metadata provide insufficient information for the purpose of evaluating the privilege claim asserted, the producing party shall include such additional information as required by the Federal Rules of Civil Procedure. Privilege logs will be produced in Microsoft Excel format to all other parties no later than 30 days after delivering a production and no later than 60 days before the close of fact discovery to allow the parties to evaluate privilege logs and conduct any necessary meet and confers or motion practice within the time allowed for discovery by the Court's scheduling order.  This provision is without prejudice to a party's right to request any extension of discovery deadlines or the rescheduling or re-noticing of depositions, should production of logs after substantial completion delay discovery in this matter.

      2.     Redactions need not be logged so long as the basis for the redaction is clear on the redacted document.  A party may not redact information on the basis it believes it to be irrelevant or confidential. Unless otherwise agreed to by the parties, redactions should only be made for legal privilege or legally protected private information, such as Social Security Numbers, information protected from disclosure under HIPAA, and other information prohibited from disclosure by law.  The parties agree to meet and confer in good faith regarding any disputed redactions prior to raising the issue with the Court.

      3.     A party that withholds any document entirely on the basis of privilege shall produce a Bates numbered placeholder page/slip sheet that contains the following language: "Document Withheld on the Basis of Privilege." A party may withhold wholly privileged members of a family group so long as the party inserts a slip sheet in place of the withheld document indicating that it has been "Withheld for Privilege" and logs such attachments in a

PROTOCOL REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND ORDER                                                    PAGE - 11
(Case No. 2:23-CV-00847-JHC)

privilege log in accordance with the requirements of this protocol. Slip sheets need not be produced for wholly-privileged document families withheld in their entirety. Each email in an email chain, as well as each attachment to an email, is a separate communication or document to which a privilege may or may not apply. Any log documenting withheld, or redacted material must include a separate entry for every communication and document. The parties shall not aggregate authors and recipients for emails in a string, nor shall the parties claim privilege or protection over aggregated emails or their attachments.

4. With respect to privileged or work-product information generated after September 30, 2021, parties are not required to include any such information in privilege logs.

5. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

6. Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. Information produced in discovery that is protected as privileged or work product shall be returned to the producing party as described in the parties' forthcoming Stipulated Protective Order, and its production shall not constitute a waiver of such protection. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

DATED: June 26, 2025

| | |
|---|---|
| /s/ Mel C. Orchard, III<br>Mel C. Orchard, III (*pro hac vice*)<br>Emily S. Madden (*pro hac vice*)<br>THE SPENCE LAW FIRM<br>15 S. Jackson St. / P.O. Box 548<br>Jackson, Wyoming 83001<br>orchard@spencelawyers.com<br>madden@spencelawyers.com<br><br>Kenneth R. Friedman (Bar # 17148)<br>FRIEDMAN RUBIN PLLP<br>1126 Highland Avenue<br>Bremerton, Washington 98337-1828<br>kfriedman@friedmanrubin.com<br><br>Peter J. Flowers (*pro hac vice*)<br>Christopher J. Warmbold (*pro hac vice*)<br>pjf@meyers-flowers.com<br>cjw@meyers-flowers.com<br><br>Lance Astrella (*pro hac vice*)<br>ASTRELLA LAW, P.C.<br>1600 Broadway, Suite 1070<br>Denver, Colorado 80202<br>lance@astrellalaw.com<br><br>Rex Sharp (*Pro hac vice*)<br>SHARP LAW LLP<br>4820 W. 75th Street<br>Prairie Village, Kansas 66208<br>rsharp@midwest-law.com<br><br>**Attorneys for Plaintiff** | /s/ David A. Perez<br>David A. Perez, Bar No. 43959<br>Alexander J. Bau, Bar No. 58745<br>PERKINS COIE LLP<br>1201 Third Avenue, Suite 4900<br>Seattle, Washington 98101-3099<br>Telephone: +1.206.359.8000<br>Facsimile: +1.206.359.9000<br>DPerez@perkinscoie.com<br>ABau@perkinscoie.com<br><br>Benjamin L. Hatch (*pro hac vice*)<br>MCGUIREWOODS LLP<br>888 16th Street N.W., Suite 500<br>Black Lives Matter Plaza<br>Washington, D.C. 20006<br>Tel: (757) 640-3700<br>Fax: (757) 640-3701<br>bhatch@mcguirewoods.com<br><br>Brian C. Riopelle (*pro hac vice*)<br>George B. Davis (*pro hac vice*)<br>Kathryn M. Barber (*pro hac vice*)<br>MCGUIREWOODS LLP<br>800 East Canal Street<br>Richmond, VA 23219-3916<br>Telephone: 804-775-1000<br>Facsimile: 804-225-5377<br>briopelle@mcguirewoods.com<br>gdavis@mcguirewoods.com<br>kbarber@mcguirewoods.com<br><br>**Attorneys for Defendant** |

### ORDER

Based on the foregoing, IT IS SO ORDERED this 26th day of June, 2025.

_____
Hon. John H. Chun