UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILSON AEROSPACE LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY INC,<br><br>Defendant. | CASE NO. 2:23-cv-00847-JHC<br><br>ORDER |

# I

### INTRODUCTION

This matter comes before the Court on Defendant the Boeing Company's Motion to Compel Discovery. Dkt. # 162 (redacted). The Court has considered the materials filed in support of and in opposition to the motion, pertinent portions of the record, and the applicable law. Being fully advised, for the reasons below, the Court GRANTS in part and DENIES in part Defendant's Motion.

//

//

//

//

ORDER - 1

## II

### BACKGROUND

Plaintiff, Wilson Aerospace LLC, brings this action again Defendant claiming that Defendant misappropriated Plaintiff's intellectual property in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*, and Washington state trade secret law.

Over the years, Plaintiff invented and fabricated several tools for Defendant. These tools and their associated technologies form the basis of Plaintiff's intellectual property claims against Defendant. *See* Dkt. # 144 at 2–4.

On September 18, 2024, Plaintiff filed its Third Amendment Complaint (TAC). Dkt. # 140. On March 14, 2025, this Court granted in part and denied in part Defendant's motion to dismiss that complaint. Dkt. # 144. Defendant answered the complaint on March 28, 2025. Dkt. # 147. The parties proceeded to discovery.

Defendant seeks to compel the production of discovery associated with Plaintiff's responses to Interrogatory Nos. 1 through No. 5. Defendant also seeks to compel the disclosure of an exhibit that Plaintiff has labelled for attorneys' eyes only (AEO) by having it relabeled it to "confidential."

## III

### DISCUSSION

Parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). A party may move a court for an order compelling disclosure or discovery. *See* Fed. R. Civ. P. 37(a)(1). "The court may order a party to provide further responses to an 'evasive or incomplete disclosure, answer, or response.'" *Doe v. Trump*, 329 F.R.D. 262, 270 (W.D. Wash. 2018) (citing Fed. R. Civ. P. 37(a)(4)). A court has "broad discretion" to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir.

2002) (citation omitted). "Although the party seeking to compel discovery has the burden of establishing that its requests" seek relevant material, the party resisting discovery bears the burden of showing that the discovery should not be permitted. *See Doe*, 329 F.R.D. at 270 (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Defendant disputes the sufficiency of three of Plaintiff's discovery responses. First, it disputes Plaintiff's supplemental responses to Interrogatory Nos. 1, 2, 4, and 5, which involve a related exhibit to Plaintiff's complaint. Second, Defendant disputes Plaintiff's designation of that exhibit as AEO. Third, Defendant disputes the sufficiency of Plaintiff's production in response to Interrogatory No. 3.

A.   Interrogatory Nos. 1, 2, 4, 5 and Exhibit 14

Defendant served four interrogatories, asking Plaintiff to (i) identify and define each of the alleged trade secrets at issue in its claims, (ii) identify the specific documents and pages (by Bates number) in which those trade secrets are embodied and were first described, and (iii) identify how each of those trade secrets was communicated to Boeing (again by Bates number, if applicable). Dkt. # 161 at 10–11.

Interrogatory Nos. 1 and 2 concern a tool referred to as the "FFTD-3," while Interrogatory Nos. 4 and 5 concern a tool referred to as the "Bolting Tool." *Id.* at 6. Defendant phrases the Interrogatories as follows:

> Interrogatory No. 1: For each Alleged [tool] Trade Secret, Identify the alleged Trade Secret with Particularity. Specifically, Identify each aspect of the alleged trade secret that causes it to have independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information; the dates on which You began and ended development of this aspect; the Documents in which each such aspect was first embodied or preserved; and the Documents in which the entire alleged trade secret was first embodied or preserved. In addition, Identify the Document (by specific pages, if applicable) that provides the most complete and self-contained embodiment of each Alleged [tool] Trade Secret.

ORDER - 3

> Interrogatory No. 4: For each Alleged [tool] Trade Secret, Describe in detail the circumstances under which it was provided to Boeing, including by Identifying all dates on which it was provided to Boeing and Identifying all Documents evidencing that it was provided to Boeing.

Dkt. # 161 at 7. Interrogatory Nos. 2 and 5 are identical to the above, except that they refer to the other tool at issue.

Defendant says that Plaintiff's responses to these interrogatories were "unintelligible and lacked any evidentiary value," largely because Plaintiff's supplemental responses consisted of two lists of "non-descriptive identifiers," made up of the letters "TS" followed by up to three numbers. *Id.* at 8. Plaintiff generated the supplemental responses' lists from Exhibit 14 to the TAC. Exhibit 14 lists alleged trade secrets (that Plaintiff claims Defendant misappropriated), featuring short entries under columns with headings like "Description," "Function/Relevance," "Why Unique?", and "Why not Known?". *See* Dkt. # 12. According to that list, Plaintiff has put about 229 trade secrets at issue. *Id.* The lists generated from Exhibit 14 are the only method by which Plaintiff has identified its alleged trade secrets; Plaintiffs have not otherwise identified them by, for example, listing the pertinent Bates ranges in its production. Dkt. # 161 at 14. Defendant says that Plaintiff has forced it to sort through "more than 8,000" documents that Plaintiff has produced to identify those alleged trade secrets. *Id.* at 8.

Defendant says that Plaintiff's identification of the trade secrets at issue, as listed in Exhibit 14, is too general to support Plaintiff's claim for misappropriation under the DTSA. It says that the "vague, fragmented descriptions in Exhibit 14 offer insufficient detail to identify [Plaintiff's] supposed trade secrets, let alone describe what makes them unique." Dkt. # 161 at 11. Plaintiff responds that it has sufficiently identified each trade secret in the lists it generated, noting that in discovery, "the purpose of interrogatory responses at this stage is to provide sufficient notice, not to litigate the ultimate merits of the underlying claims." Dkt. # 163 at 9

ORDER - 4

(citing *RealD Spark LLC v. Microsoft Corp.*, 2023 WL 3304250, at *4 (W.D. Wash. May 8, 2023)).  Plaintiff says that its present disclosures "enable Boeing to understand the scope of the alleged misappropriation and prepare its defenses, without forcing Wilson to prematurely disclose the full technical substance of its proprietary information in a manner that risks further exposure."  *Id.* at 4.

The issue is whether the lists in Plaintiff's supplemental responses, generated from Exhibit 14 to the TAC, satisfy discovery obligations.  "A plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.'"  *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (citing *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)).  The plaintiff "should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade."  *Id.* (citing *Universal Analytics v. MacNeal–Schwendler Corp.,* 707 F.Supp. 1170, 1177 (C.D. Cal. 1989) (citation omitted), *aff'd*, 914 F.2d 1256 (9th Cir.1990)).

But since "trade secrets derive their value from nondisclosure, discovery involving trade secrets presents a 'delicate problem.'"  *Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 2025 WL 2315671, at *4 (9th Cir. Aug. 12, 2025) (citing *Hartley Pen Co. v. U.S. Dist. Ct.*, 287 F.2d 324, 328 (9th Cir. 1961)).  Courts must balance a plaintiff's interest in preventing further disclosure to the party they allege misappropriated their intellectual property in the first place with the defendant's right to the evidence against them to be able to properly defend themselves.  *Id.*  These competing interests in discovery lead to an "iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification."  *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020).

ORDER - 5

In assessing this balance, the Court concludes that Plaintiff has not identified its trade secrets with sufficient particularity. Exhibit 14, the table that forms the only source of Plaintiff's articulated trade secrets communicated in its supplemental responses, was created before discovery. While Exhibit 14 does list each alleged trade secret and note how they were communicated to Defendant, it does not list the documentary sources for these trade secrets, leaving Defendant with only Plaintiff's word as to what those trade secrets are. "It is inadequate for plaintiffs to 'cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information,'" but that is just what Plaintiff has apparently done here. *InteliClear*, 978 F.3d at 658 (citing *X6D Ltd. v. Li-Tek Corps. Co.*, 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012)). Exhibit 14, and Plaintiff's supplementary responses based on it, is neither the alleged trade secrets themselves nor the documents that comprise the alleged trade secrets at issue. The exhibit was created by an attorney to state a claim on which relief can be granted. Exhibit 14 and the derived supplemental responses are thus like the insufficient production at issue in *Group14 Technologies* in that the supplementary responses "merely repeats the . . . categor[ies] of trade secrets set forth in the Complaint" or otherwise "summarize[] . . . the information allegedly provided to [Defendant.]" *See* 2023 WL 7183584, at *9 (W.D. Wash. Nov. 1, 2023).

Further, parts of Exhibit 14 are vague. For example, the Exhibit lists "PowerPoint Presentation" 31 times as the method Plaintiff used to communicate the alleged trade secret to Defendant. *See generally* Dkt. # 12. Plaintiff has not otherwise identified those PowerPoint presentations by Bates range in its production. The Court suspects that Defendant may be correct in presuming that, in creating Exhibit 14, Plaintiff has already identified for itself these PowerPoint presentations (and other documents referenced in Exhibit 14) by Bates range, such that there is no burden on Plaintiff to specify *which* Bates ranges pertain to which documents

ORDER - 6

evidencing trade secrets.  Courts in this District generally require plaintiffs in such scenarios to specify documentary evidence in trade secrets cases with greater specificity, such as by using Bates ranges.  *See, e.g., Bite Tech, Inc. v. X2 Biosystems, Inc.*, 2013 WL 12191342, at *3 (W.D. Wash. May 13, 2013) ("Thus, at this early stage of discovery, [Defendant] shall supply its response by directing [Plaintiff] to specific sections in the referred documents that sufficiently identify the trade secrets in question."); *RealD Spark*, 2023 WL 3304250, at *5 ("the Court DIRECTS [Plaintiff] to specify the pages within [Bates range] that reveal" the material underlying the trade secret claims).  Finally, since the documents at issue here are likely business records, the Court notes that Plaintiff need only respond to the interrogatories by "specifying the records that must be reviewed, in sufficient detail to enable [Defendant] to *locate and identify them as readily as the responding party could*." Fed. R. Civ. P. 33(d)(1) (emphasis added).  Accordingly, the Court ORDERS Plaintiff to produce supplemental responses to Defendant's Interrogatory Nos. 1, 2, 4, and 5 with references using Bates ranges to documents it has produced.

B.     Exhibit 14's AEO designation

Next, Defendant disputes the propriety of Plaintiff's AEO designation of Exhibit 14. Documents designated AEO (by a label on each of the designated document's pages) may be disclosed only to specific persons as provided by the Stipulated Protective Order.  *See* Dkt. # 153 at 15, § 8(b).  Defendant says that Exhibit 14's AEO designation means that its counsel "cannot consult with [Defendant] about the very information that [Plaintiff] contends was misappropriated." Dkt. # 161 at 15.  Plaintiff says that it is legitimately concerned about the risk posed by further exposure of its alleged trade secrets but has proposed a compromise to Defendant, by which two of Defendant's employees could see the document.

The Court concludes that this dispute is mooted by its order that Plaintiff supplement its responses to Interrogatory Nos. 1, 2, 4, and 5 above. Plaintiff's provision of specific Bates ranges identifying the documentary evidence to support its alleged trade secrets eliminates the need for anyone other than Defendant's counsel to look at Exhibit 14 itself. Again, Exhibit 14 is not the underlying documentary evidence of trade secrets: It is a document created by counsel for stating a claim sufficient to survive a motion to dismiss. Accordingly, the Court DENIES as moot Defendant's request to downgrade Exhibit 14's confidentiality designation from AEO.

C.      Interrogatory No. 3

Finally, the parties dispute the sufficiency of Plaintiff's supplemental production in response to Interrogatory No. 3. Interrogatory No. 3 seeks information about Plaintiff's "investigation into its legal claims against" Defendant. Dkt. # 161 at 16. Defendant says that in Plaintiff's initial response to that interrogatory, Plaintiff identified "three specific transcripts and one email," *id.*, after which it served on Plaintiff another request for production seeking "[a]ll Documents and Communications necessary to provide a complete response to Interrogatory No. 3." *Id.* (citing Dkt. # 162-4). Plaintiff says that it reviewed "certain transcripts and emails . . . in connection with its pre-suit investigation of the claims at issue" and then "produced these materials" in a manner that "fully addresses the relief [Defendant] seeks with respect to this request." Dkt. # 163 at 13–14. Defendant says that Plaintiff has done no such thing, and instead produced only audio files. Dkt. # 165 at 6.

Plaintiff does not explain why it produced the audio files but not the transcripts that it said existed and which Defendants requested. Nor has Plaintiff tried to explain why it has not provided Defendant with the email at issue. Plaintiff's failure to produce these materials strikes the Court as an "evasive or incomplete disclosure, answer or response." *See* Fed. R. Civ. P. 37(a)(4). Accordingly, Plaintiff is ORDERED to supplement its response to Request for

Production No. 3, as set out in Dkt. # 162-4 at 7, with the transcripts and email at issue or explain when these documents were "last retrievable in [their] original form and the reasons for [their] deletion or destruction." Dkt. # 161 at 17.

## IV

### CONCLUSION

For the reasons above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Compel. Dkt. # 161. Plaintiff is ORDERED to produce supplemental responses to Defendant's Interrogatory Nos. 1, 2, 4, and 5 with references using Bates ranges to documents it has produced to Defendants. Plaintiff is ORDERED to produce a supplemental response to Interrogatory No. 3 containing the transcripts and email communication at issue or else provide a suitable explanation. The motion is otherwise DENIED as moot.

Dated this 25th day of September, 2025.

John H. Chun
United States District Judge